J. W. NORTHCUTT, RESPONDENT, V. FRANK L. McKIBBEN AND ELIZA-BETH McKIBBEN, HIS WIFE, APPELLANTS.—159 S. W. (2d) 699.

St. Louis Court of Appeals. Opinion filed March 3, 1942.

*Roy Hamlin* for appellants.

*Ben Ely* for respondent.

HUGHES, P. J.—This is an action in ejectment to recover the possession of certain real estate situate in Hannibal, Missouri.

The petition alleges that plaintiff became entitled to such possession on the 30th day of April, 1940, by becoming the owner of the real estate at a trustee's sale under a deed of trust given by the defendants, and that from said date the defendants have withheld and do still withhold the possession from plaintiff. The prayer of the petition is for the recovery of the possession of the real estate and for damages in the sum of $500 and for rents and profits from April 30, 1940, to the date of judgment.

The answer is (1) a general denial, and (2) a former suit pending, and (3) a plea that the note and deed of trust through which plaintiff obtained a trustee's deed were without consideration and void because given in violation of Section 3, p. 79, Laws of Missouri, Extra Session 1933-1934, in that plaintiff was an agent and employee of Dick Brothers Brewing Company and that the note and deed of trust had been given by the defendants to borrow money for and on behalf

of defendants' two sons, to enable the two sons to purchase equipment and intoxicating liquors and engage in the retail business of selling intoxicating liquors; that Dick Brothers Brewing Company and this plaintiff not only furnished the money represented by said note but also furnished equipment for a saloon to be conducted by defendants' two sons, and obligated defendants' sons to buy and sell at retail the products manufactured and sold by the Brewing Company, and by reason of these things the trustee's deed to plaintiff was void, and (4) a plea by way of counterclaim, that defendants had been damaged by reason of the advertisement and sale under the deed of trust and by the filing of this suit, for which they prayed judgment against plaintiff.

Plaintiff's reply was a general denial.

The trial of the issues thus framed was had before the court and a jury.

There was no dispute as to plaintiff's documentary evidence, which was as follows:

On July 9, 1936, defendants executed and delivered to one Fred Hodson a promissory note for $1500 with interest at the rate of 6 per cent per annum, and payable three years after date; and to secure the same executed and delivered a deed of trust covering the property involved. On the 30th day of April, 1940, default having been made as to payment of both principle and interest the deed of trust was foreclosed and the plaintiff, who held and claimed to be the owner of the note, purchased the property and received the deed from the trustee thereto.

Defendants refused to surrender possession of the property involved and this suit in ejectment was instituted.

The facts attending the transaction were developed at great length and are in substance as follows:

Walter Stillwell, an attorney, testified that about July 9, 1936, he had a conversation with Fred Hodson in regard to preparing a note and deed of trust and the examination of an abstract; that he did examine the abstract and prepared the note and deed of trust and they were executed by Frank L. and Elizabeth McKibben at his office in the Court House at Hannibal on or about July 9, 1936; that he held the papers until the next day at which time Hodson said he would deliver the $1500, the amount of the note; that Frank L. McKibben instructed him to deliver the money to his two sons, Paul and Lawrence McKibben, and take a receipt for it; that on July 10, 1936, Fred Hodson came to his office with the $1500 in cash, and that he (the witness) and the two McKibben boys took the $1500 and went to the office of Bassen and Raible at the American Trust Company, and paid off a mortgage on the property, and that the balance of the money remaining he turned over to Paul and Lawrence McKibben, and they gave him a receipt for it, which receipt he gave to Fred

Hodson. He further testified that the two senior McKibbens were accompanied to his office by their two sons on the occasion that the note and mortgage were signed, but the elder McKibbens were not present the next day when the money was delivered.

Fred Hodson, called as a witness by plaintiff, testified that in the spring and summer of 1936, he worked for J. W. Northcutt as a book-keeper; that during the latter part of June or the first part of July, 1936, Paul and Lawrence McKibben talked to him about getting a loan for their parents Frank and Elizabeth McKibben; witnesses said that they came down and asked him if he knew where they could get some money; that their father and mother would make a loan on the home property; that they wanted $1500; that he told them, "Well, we would have to check up on the deed of trust and see if everything was okay," which was done; that it was not mentioned to him at that time about a loan to the McKibben boys for going into the saloon business. This witness further testified that he took Mr. Northcutt by the property in a car and showed him the property in that manner; that after he heard that the McKibbens had signed the note he got the $1500 from Mr. Northcutt and took it to Mr. Stillwell's office and turned it over to him; that he kept the note and deed of trust in his possession for about two or three months, and Mr. Northcutt asked for them and he endorsed his name on the back of the note and turned the papers over to Mr. Northcutt.

On cross-examination witness Hodson testified that Mr. Northcutt was distributor of beer for Dick Brothers Brewing Company, that Northcutt had an agency for the Brewing Company for Hannibal, which agency he took over when prohibition was abolished in 1933. He further testified that he did not know that Paul and Lawrence McKibben were getting the money; that they said they wanted to borrow some money for their folks; that the note was made in his name as a business proposition but he had no interest in the $1500 or in the note. He further testified that Bob Dick looked after and personally supervised the Hannibal territory for the Brewing Company, and he was in Mr. Northcutt's place of business frequently during the months of June and July. He further testified that the reason the note was not taken in Mr. Northcutt's name was a busi-ness proposition, that Mr. Northcutt had been requested to make loans and stuff like that and it was just a business proposition; that he did not remember whether it was Mr. Northcutt or Mr. Still-well that directed the note be made payable to him.

J. W. Northcutt, plaintiff, testified that Mr. Hodson told him that Mr. Frank L. McKibben and wife wanted to make a loan, which loan witness said he told Hodson, if the security was sufficient he would make; that he requested that the note and deed of trust be made out in Mr. Hodson's name; that he would not make any loan in his name because it would be a matter of record and would be embarrassing;

that after the execution of the note and deed of trust he got the money out of his account in the Hannibal National Bank. He further testified that the McKibben boys handled Dick Brothers draught beer for on or about a year after they opened their saloon, and if they sold any other beer, he didn't know it; that in the months of June and July, 1936, he was the exclusive distributor of Dick Brothers Brewing Products in Hannibal; that he was not an agent, he was a jobber; that he knew nothing about who had a novelty box put in the McKibben saloon; that he did cause a neon sign to be erected in front of the building advertising Dick's beer, that the sign was furnished by the Brewing Company and the Brewing Company paid for hanging it. He further testified that before the loan was made the two McKibben boys came down one day and said they were thinking about going into the saloon business and asked what he thought about it, and he told them that was for them to decide themselves, and they asked if he would be interested in financing it and he said no, he wouldn't be interested; that he (witness) was interested in getting them to take his line of beer.

At the close of plaintiff's evidence defendants filed separate instructions in the nature of demurrers to plaintiff's evidence, which the court refused to give.

The defendants' evidence was in substance as follows:

Marion T. Noble, testified that he was employed by Dick Brothers Brewing Company to put a neon sign on the building, known as the Antlers Bar, and his services were paid for by the Brewing Company, the bill being first "okayed" by Mr. Northcutt.

Paul McKibben, testified that he is a son of the defendants and a brother of Lawrence B. McKibben; that he and his brother opened a saloon at 415 Broadway, in Hannibal, Missouri, on the 29th day of July, 1936, and that they operated the saloon under the name of Antlers Bar; that the latter part of June or early part of July he and his brother went to Mr. Northcutt's place of business and had a conversation with him; that his brother and he approached Mr. Northcutt, to the best of his knowledge, for an additional amount of money to continue to open up this place of business here in Hannibal, due to the fact that some of the money they had spoken for had failed to come through and they had to have more money; that their furniture was being made and they had ordered supplies and light fixtures, etc., and was under way with the place; they had the place rented at that time; that Mr. Northcutt asked what kind of security they could furnish and he told him that his parents owned the place on Lyon Street and asked him if he would like to take a look at it, and he took Mr. Northcutt in his car out past the place and looked at it; that the conversation came up that they would like to have this $1500 for the purpose of going into the saloon business, and Mr. Northcutt said if they would agree to handle Dick Brothers Beer exclusive on

draught he thought he could possibly do something for them, and they went out to look at the property; Mr. Northcutt stated the fact that he was going to Quincy on the day following; that he would talk with Dick Brothers up there and would let them know the outcome when he got back; that on the following day he was called on the telephone by Mr. Northcutt, who stated that they should be at Mr. Stillwell's office at one-thirty the following afternoon, and that they would draw up the papers and that they could secure the $1500 to continue the business; that he did take his father and mother and his brother Lawrence to Mr. Stillwell's office, which was in the Court House, and in the corridor he saw Mr. Fred Hodson and Mr. J. W. Northcutt who were slightly past the door of Mr. Stillwell's office; that they (the McKibbens) all four went into Mr. Stillwell's back office and his father and mother signed the note and left immediately; that Mr. Hodson delivered to him $1500 in $50 bills and Mr. Hodson left, and Mrs. Stillwell, his brother and he went to the American Trust Bank and paid $515 for the deed of trust and abstract and brought it back to Mr. Stillwell's office, and the other $985 was taken to the Farmers & Merchants Bank and deposited in the name of Paul A. and Lawrence B. McKibben; that the money was paid the same day the note was signed; that he and his brother used the money to buy State, county and city license to operate a fully established liquor place, and for equipment in the place, and for liquor, and they opened on the 29th of July, 1936; that while witness was at the place putting it in condition to open for business Mr. Bob Dick and Mr. J. W. Northcutt came into the building to make arrangements for what size novelty box he would like to have; that Mr. Bob Dick said they would order from Erlicks Novelty Box Company, in St. Joseph, Missouri, a novelty box which would cost $117 and which they (McKibbens) would not have to pay for but could use as long as they used Dick Brothers Draught Beer, or if they were dissatisfied with the use of Dick Brothers Beer they were at liberty to place anyone else's beer along by the side of it and give it a fair trial; that Mr. Northcutt brought the neon sign to the building in a truck himself; that they had Dick Brothers Beer exclusively on draught for over a year; that finally they discontinued using Dick's beer, and he was approached by one of the officers and Mr. Northcutt one evening and they wanted their novelty box or $100 in cash; that he told them he didn't have the money and needed the box and would see about it; that after they closed their business Mr. Northcutt came and got the novelty box. The witness further testified that he had never talked with Mr. Hodson about a loan, that the talk was with Mr. Northcutt, and that after they opened up Mr. Northcutt and some member of Dick Brothers Brewing Company were in the place once or twice a week at least, they would usually be together; that the first he knew of Mr. Hodson was when the note and deed of trust were

made out to Mr. Hodson on the afternoon that the papers were signed; that on that occasion Mr. Northcutt said Fred would do the transaction, that he (Northcutt) wasn't supposed to be around there.

Frank L. McKibben, one of the defendants, testified that he and his wife signed the note on the 9th day of July, 1936, in Mr. Stillwell's office and that his sons, Paul and Lawrence, were with him at the time; that he saw Mr. Hodson and Mr. Northcutt around at the time, Mr. Hodson was in Stillwell's office and Mr. Northcutt was in the corridor; that he saw no money at all and never at any time got any of the $1500 but that $515 of it was used to pay a note that was on his place; that in the early part of August, 1939, he met Mr. Northcutt on the street, and Mr. Northcutt said, "Do you know that note and deed of trust is due?" that he said, "I know the time has expired;" and Mr. Northcutt said, "What are you going to do about it?" and he said, "I can't do anything about it; I haven't got anything to do anything with; in fact I don't know who has got my note and deed of trust; and Mr. Northcutt said, "I have it;" and he said, "How long have you had it?" and Mr. Northcutt said, "I bought it about two months ago." The witness further said that none of the money from the note and mortgage was paid to him because his boys were the ones that were going into the business and not himself.

W. C. Roeseler testified that he was assistant cashier of the Hannibal National Bank; that the ledger sheet showing the account of J. W. Northcutt shows a withdrawal of $1500 on July 10, 1936. He further testified that the ledger sheet shows that the account is carried in the name of "J. W. Northcutt Beer Account;" that he could not state positive but he rather thought that Mr. Northcutt had more than one account at that time; that he has now and he thinks he always carried two accounts; that the check dated July 10, 1936, bears the notation down in the corner, "Beer Account," and was paid from that account.

W. C. Fisher, testified that he was City Clerk of the City of Hannibal; that the records of the City shows that a license to sell intoxicating liquors was issued to Paul A. McKibben and Lawrence B. McKibben on July 23, 1936, which covered the last six months of 1936.

S. T. McIntyre, testified that he was County Assessor of Marion County; that no notes or mortgages are shown on the assessment lists of J. W. Northcutt for the years of 1937, 1938, 1939 and 1940.

At the close of all the evidence each defendant asked the court to give to the jury an instruction in the nature of a demurrer, which requests were refused by the court.

Thereupon the court at the request of plaintiff gave to the jury a peremptory instruction to find for the plaintiff, whereupon the jury returned a verdict in accordance with the instruction of the court finding the issues in the case for the plaintiff and against the defendant, and that plaintiff is and was on the day of the institution of this

suit entitled to the possession of the premises in controversy (describing the property as described in the petition and in the trustees' deed to J. W. Northcutt) and further finding that during all of said period, the possession of said real estate was wrongfully withheld by defendant, and finding and assessing plaintiff's damages for the retention of said real estate by the defendants to be $1.00 and finding the value of the monthly rents and profits of said real estate to be $1; and further finding the issues for the plaintiff and against the defendants on the defendants' counterclaim.

After unavailing motion of defendants for a new trial, final judgment having been entered in accordance with the verdict of the jury, defendants appeal.

We are of the opinion that appellants' abstract sets forth so much of the record as is necessary to a full and complete understanding of all the questions presented to this court for decision in accordance with Rule 15 of this court. For this reason, as well as for the failure of respondent to comply with Rule 33 of this court by filing his objections in writing within ten days after a copy of appellants' abstract had been served upon him, respondent's motion to dismiss appeal is overruled.

The answer sets out facts which might or could have been the basis for equitable relief if so plead and preyed, but no equitable relief having been asked the case remains one at law. [Kerstner v. Vorweg, 130 Mo. 196, 32 S. W. 298.] In cases where neither party asks that title be adjudicated, yet it is necessary for the court to ascertain which party has title in order to render the judgment asked for by the pleadings, the title is incidentally or collaterally and not directly involved, and this court has jurisdiction. [Gibbany v. Walker, 242 Mo. 156, 113 S. W. 792; State ex rel. Brown v. Hughes, 345 Mo. 958, 137 S. W. (2d) 544.]

We do not think there is merit in appellants' plea of a prior suit pending. The evidence developed that at the time of the institution of this action and at the time of the trial, there was an equitable action pending on change of venue in the Circuit Court of Audrain County, wherein the plaintiff in this case was defendant and the defendants in this case were plaintiffs, and in which equitable action it was sought to cancel the trustees' deed to J. W. Northcutt and decree the title to the real estate herein involved to be in Frank and Elizabeth McKibben. The object and purpose of that equitable action and of this law action were not the same. The principles of law were not the same. The parties being reversed were not the same. [Long v. Lackawanna Coal & Iron Co., 233 Mo. 713, 734, 735, 136 S. W. 673.] This is a statutory action at law involving solely the right of possession of the property, and the prior suit is an action in equity for the purpose of canceling a deed and adjusting and decreeing title to the property. Generally the defense of a prior suit pending applies only when the *plaintiff* in

both suits is the *same person* and both are commenced by *himself* and not to cases where there are cross-suits, the plaintiff in one suit being the defendant in the other, because in such case it cannot be said that either party is prosecuting *two* actions against the other. [Rodney v. Gibbs, 184 Mo. 1, 10, 82 S. W. 187.]

At the close of plaintiff's evidence and again at the close of all of the evidence the defendants prayed the court to instruct the jury that under the pleading and the evidence the verdict must be for the defendants.

The issue involved was as to whether the note and deed of trust given by Frank and Elizabeth McKibben to Fred Hodson, was a loan either directly or indirectly from J. W. Northcutt, who was either a wholesaler of beer or the agent of Dick Bros. Brewing Company, and to Paul and Lawrence McKibben, to enable them to purchase equipment and liquors in order to engage in the retail business for sale of intoxicating liquors, and was therefore an illegal transaction and under the ban of Section 3, p. 79, Laws of Missouri, Extra Session, 1933-1934, which statute is as follows:

"Distillers, wholesalers, winemakers, brewers or their employees, officers or agents, shall not, under any circumstances, directly or indirectly, have any financial interest in the retail business for sale of intoxicating liquors, and shall not directly or indirectly loan, give away or furnish equipment, money, credit or property of any kind, except ordinary commercial credit for liquors sold to such retail dealers. All contracts entered into between distillers, brewers and winemakers, or their officers or directors, in any way concening any of their products, obligating such retail dealers to buy or sell only the products of any such distillers, brewers or winemakers or obligating such retail dealers to buy or sell the major part of such products required by such retail vendors from any such distiller, brewer or winemaker, shall be void and unenforceable in any court in this state, and proof of the execution of such a contract shall forfeit the license of both vendor and vendee."

The purpose and meaning of this Statute, in so far as the issues in this case are concerned, is unambiguous. It was clearly designed to remove the retail dealer of intoxicating liquors from all obligations in a financial or business sense to the wholesaler, except ordinary commercial credit for liquors sold to such retail dealers. It would be a strained construction and would thwart this evident purpose of the Legislature to say that the statute only applies to furnishing equipment or loaning money to the retail dealer after he has opened his place of business as the respondent contends. The retail dealer would not require such assistance, especially as to equipment, after he had already established and begun operation of his business.

And when applying the statute to the facts in this case it matters not whether Northcutt in making the loan was an agent of and acting

for the Brewing Company, or whether, as he claimed, he was a jobber and selling beer at wholesale, because the statute prohibits either wholesaler, brewers or their agents from directly or indirectly loaning or giving away or furnishing money or equipment to be used in the retail business for sale of intoxicating liquors. A contract made in contravention of such statute would be unlawful and invalid whether so declared by the statute or not. [Publishing Co. v. McNichols, 170 Mo. App. 709, 722, 153 S. W. 562.] And whether the note in this case belonged to the Brewing Company or to Northcutt is immaterial because neither could loan money or furnish equipment for the purposes forbidden by the statute. Therefore in considering the demurrers to plaintiff's case, the question was whether it was money loaned directly or indirectly to Paul and Lawrence McKibben for the purpose of enabling them to engage in the business for sale of intoxicating liquors. The law will not uphold a contract made in contravention of statutory provisions. But when we look to plaintiff's evidence on that question, as we must when considering the defendants' demurrers, we find that both Northcutt, and Hodson in whose name the note and deed of trust were executed for some reason not satisfactorily given, testified that it was a loan of money in the usual and ordinary course of such transactions to Frank and Elizabeth McKibben without any knowledge whatever on their part that the loan was being made for the benefit of the sons, Paul and Lawrence McKibben, who were then preparing to open and conduct a place for the retail sale of intoxicating liquor. We are frank to say that under the facts and circumstances attending the transaction and the making of the loan such testimony seems incredulous, yet, it could have been true, and if it was true then the loan did not come under the ban of the statute and constituted a legal and enforceable contract. The credibility of plaintiff's testimony and the weight to be attached to it was for the jury alone to determine, and the defendants' demurrers were properly denied.

The court having denied defendants' demurrers, gave to the jury at plaintiff's request a peremptory instruction to find the issues for the plaintiff. We think this was error. Without again reviewing the evidence which we have fully covered herein, there was certainly ample evidence to have authorized a finding by the jury that the loan was made to Frank and Elizabeth McKibben, who owned the security, their home, for the express purpose of enabling their sons to procure equipment and liquors to engage in the retail business of selling intoxicating liquors. Whether or not such was the purpose of the loan was a question of fact which should have been submitted to the jury under proper instructions. And the fact that a part of the loan was used to pay a note secured by a prior deed of trust on the McKibben property was immaterial, because such part of the loan though in itself for a lawful purpose was not separate and inde-

pendent of the part alleged to be loaned for an unlawful purpose; it was all one transaction. [Hagler v. City of Salem, 333 Mo. 330, 62 S. W. (2d) 751; Miller v. Bowen Coal & Mining Co. (Mo. App.), 40 S. W. (2d) 485.] Plaintiff's peremptory instruction should have been denied, and the issues submitted to the jury on appropriate instructions.

Inasmuch as the case must be retried we should give consideration to the so-called counterclaim contained in defendants' answer. Defendants seek to recover by way of counterclaim damages claimed to have been sustained by reason of the foreclosure of the deed of trust given by them and also damages growing out of this suit in ejectment being filed against them. There is no charge of malice or of the malicious prosecution of the suit. We think the law is well settled that a defendant is not entitled to the benefit of a counterclaim unless the same existed in his favor at the time the suit was commenced. [Iler v. Nat. Bank, 69 Mo. App. 64; Todd v. Crutsinger, 30 Mo. App. 145; Reppy v. Reppy, 46 Mo. App. 571; Second Baptist Church v. Beecham (Mo. App.), 180 S. W. 1065.] In ordinary actions the party against whom an action is brought cannot recover damages, however ill founded and wrongful the action may have been. The payment of costs seems to be the only liability resting upon a defeated plaintiff. [Talbott v. Plaster Co., 151 Mo. App. 538, 132 S. W. 15.]

For the error in the giving of the peremptory instruction at plaintiff's request the judgment should be reversed and the cause remanded for further proceedings in accordance herewith. It is so ordered. *McCullen* and *Anderson, JJ.,* concur.