**TOM BOY, INC., Plaintiff-Appellant,**

**v.**

**John J. QUINN, Excise Commissioner of City of St. Louis, Defendant-Respondent.**

**No. 53676.**

Supreme Court of Missouri, En Banc.

Sept. 9, 1968.

Daniel P. Reardon, Jr., St. Louis, for appellant.

Gary M. Gaertner, City Counselor, Conway B. Briscoe, Jr., Asst. City Counselor, Thomas F. McGuire, City Counselor, St. Louis, for respondent.

HENLEY, Judge.

This is an appeal from a judgment affirming an order of the Excise Commissioner of the City of St. Louis (Commissioner) denying the application of Tom Boy, Inc., (Tom Boy) for renewal of its license to sell 5% beer at wholesale in the City of St. Louis. Tom Boy sought review of the Commissioner's order in the circuit court of the City of St. Louis pursuant to Chapter 536, RSMo 1959. That court affirmed the order of the Commissioner and Tom Boy appealed to the St. Louis Court of Appeals. That court affirmed the judgment. We ordered the case transferred to this court, and reverse and remand.

After finding that Tom Boy met all other requirements for renewal of the license, the Commissioner denied renewal on the ground that to grant it would be contrary to the provisions of § 374.025 of the Revised Code of the City of St. Louis. In his written decision the Commissioner states eight reasons why granting the license would contravene that section; those reasons will

be referred to later. Section 374.025 is as follows:

"Manufacturers, distillers, wholesalers, wine makers, brewers or their employees, officers or agents shall not, under any circumstances, directly or indirectly, have any financial interest in the retail business for the sale of intoxicating liquor or non-intoxicating beer, and shall not, directly or indirectly, loan, give away or furnish equipment, money, credit or property of any kind, except ordinary commercial credit for intoxicating liquor or non-intoxicating beer sold to such retail dealers. Proof of such relationship shall be grounds for revoking the license of the manufacturer, distiller, or wholesaler, or wine maker, or brewer and the retailer. No such manufacturer, distiller, wholesaler, wine maker, or brewer, or the employees, officers or agents thereof, shall make any contract in any way concerning any of their products, obligating such retail dealers to buy or sell only the products of any such manufacturer, distiller, brewer, or wine maker, or obligating such retail dealers to buy or sell the major part of such products required by such retail vendors from any such manufacturer, distiller, brewer or wine maker, and proof of the execution of any such arrangement, or contract shall result in the cancellation of or revocation of the license of the manufacturer or brewer, or wholesaler, or distributor and the retailer."

This section of the St. Louis code is, in substance, the same as § 311.070, RSMo 1959, V.A.M.S.

All evidence adduced was developed from Tom Boy's managing officer or produced by him in documentary form at the request of Commissioner. The evidence is that Tom Boy, Inc., is a Missouri corporation located in the City of St. Louis; the majority of its stock is owned by Clem G. Krekeler, its managing officer, and members of his family. It functions as the vehicle for a collective buying, central warehousing and cooperative advertising and merchandising operation for independently owned retail grocery stores in Missouri and Illinois, which, by contract, are permitted to use the name "Tom Boy." The basic concept underlying Tom Boy's operation is that by centralizing the buying of merchandise, lower prices for quantity purchases may be obtained from canners and other suppliers resulting in savings which are passed on to individual retailers in proportion to their purchases, thereby enabling them to compete with chain grocery stores. The contract between Tom Boy and a retailer does not require the latter to purchase stock in Tom Boy, Inc.; however, a few have done so. The contract does not require the retailer to purchase all merchandise from Tom Boy; however, approximately 60% of merchandise sold by the retailer is so purchased. The contract does require that the retailer purchase Tom Boy, Inc., fifteen-year debentures in an amount equal to his anticipated average weekly purchases of merchandise and that he maintain his debenture holdings thereafter in an amount equal to any increase in his average weekly purchases. The debentures bear interest at 5½% per annum, payable direct to the retailer if his account is current; if delinquent, the interest is credited on the retailer's account. The purpose of requiring the retailer to purchase debentures is two-fold. One, they serve as a guarantee for the retailer's account. Two, Tom Boy thereby obtains funds which it uses in the operation of its business. Regarding the guarantee, the contract recites that Tom Boy shall have a "first lien" on the debentures for the purpose of securing payment of the retailer's indebtedness, and that it shall refuse to transfer such debentures on its books until any indebtedness due has been paid in full. Tom Boy's Board of Directors is authorized by terms of the debenture to call it at any time prior to its redemption date if the retailer is indebted to Tom Boy. The debentures rank equally with each other, are subordinated to claims of Tom Boy's general creditors, and superior only to holders of its stock. Retail store owners hold debentures in amount of $811,372; net

worth of Tom Boy is $863,976; net working capital of Tom Boy is $1,254,000.

As to payment of the retailer's account with Tom Boy, the agreement reads: "Retailer will be sent a statement each week showing his total purchases for the preceding week. Check for the full amount of the preceding week's purchases must reach TOM BOY'S warehouse no later than Thursday of the following week. * * *" The evidence is that the retailer's account is paid within approximately ten days or two weeks after receipt of merchandise. At the time of the Commissioner's hearing approximately 95% of the accounts of Tom Boy retailers were current. It is undisputed that Tom Boy sells groceries, meats, dairy and bakery products and other like merchandise to its affiliated retailers on credit. It is also undisputed that it sells beer to these retailers, but there is no evidence it sells this item on credit. It is also undisputed that Tom Boy furnishes to the retailer without cost an enamel sign that reads, "Tom Boy." Further, the evidence is that in the past Tom Boy has occasionally endorsed notes or guaranteed loans of its retailers for the purchase of store equipment; however, at the time of this hearing and the Commissioner's order, Tom Boy was not the endorser or guarantor of any indebtedness of its retailers.

The contract between Tom Boy and the retailers further provides for cooperative advertising and merchandising by the individual stores through Tom Boy. This produces rebates from the manufacturers of nationally known products paid to Tom Boy which it refunds semi-annually to the individual store owners. For example, when the Tom Boy stores advertise by name the soap or detergent or bakery product of certain companies, these companies participate in the cost of this advertising by contributing a portion of the cost to Tom Boy who, in turn, refunds approximately one-half this contribution to the retailers. As to merchandising, certain items such as dairy products and other articles locally produced and usually sold fresh in a gro-

cery store, the local producer sells and delivers direct to each retailer and sends one bill to Tom Boy for all such sales. Through this method the producer gets one check, from Tom Boy, rather than 100 checks from that many retailers. For this service the producer gives Tom Boy a discount, one half of which it refunds semi-annually to the participating retailers.

The Commissioner made the following findings as reasons for his decision not to renew the license:

1. "* * * I find that, in order for a store operator to qualify as a retail Tom Boy store, the operator must purchase Tom Boy, Inc., debentures in an amount equal to an average week's purchase of supplies from Tom Boy, Inc. These debentures bear 5½% annual interest. The debenture holders' claim on the assets of the corporation is subordinate to the claims of all other creditors and is prior only to the claims of the stockholders. Retail store operators hold $811,000.00 worth of debentures. The working capital of Tom Boy, Inc., is $1,250.000.00. The net worth of Tom Boy, Inc., is $864,000.00. In view of the fact that the sum total of debentures held by retail operators is almost equal to the net worth of the corporation, and also in view of the fact that it provides a very substantial portion of the working capital, I find that it is impossible for me to say that there is not at least an indirect interest on the part of Tom Boy, Inc., in these retail store operators."

2. "* * * I find that Tom Boy, Inc., provides horizontal and vertical enameled exterior signs to retail store operators free of cost."

3. "* * * I find that approximately every six months, Tom Boy sends a refund check to its retail dealers for advertising rebates and quantity purchase discounts on groceries, dairy products and drugs."

4. "* * * I find that Tom Boy, Inc., gives its retail store operators credit for groceries for a term of about one and one-half weeks."

5. "* * * I find that Tom Boy pays 5½% annual interest to its retail operators for money they have invested in these debentures."

6. "In the Tom Boy 'Merchandise Advertising Contract' the retailers agree to 'maintain an adequate stock of the items advertised.' Also, a marginal retail operator of poor credit standing who has invested substantial part of his capital in Tom Boy debentures would be forced, as a result of circumstances, to purchase virtually all of his merchandise from Tom Boy, Inc.

"Additional Objections

"The two following additional objections to the approval of this application for a license are also raised, however, from statements made to me by Mr. Krekeler and his attorney, Mr. Reardon, it appears that if these were the only objections, Tom Boy, Inc., would be willing to alter their financial structure and amend their policies in order to bring Tom Boy, Inc., into compliance."

7. "A small number of retail store operators own stock in Tom Boy, Inc."

8. "Occasionally, Tom Boy, Inc., guarantees equipment loans made by banks to Tom Boy retail store operators."

■ The scope of our review in this case extends to determination of whether the findings and decision of the Commissioner are supported by competent and substantial evidence upon the whole record, and authorized by law. We may not substitute our judgment on the evidence for that of the Commissioner and we may not set aside his decision, unless it is not supported by competent and substantial evidence on the whole record, or it is not authorized by law, is arbitrary, capricious or involves an abuse of discretion. State ex rel. Favazza v. Ketchum, Mo., 367 S.W.2d 542, 546 [2, 3]; Pinzino v. Supervisor of Liquor Control, Mo., 334 S.W.2d 20, 26 [4]; Baker & Theodore, Inc., v. Quinn, Mo.App., 400 S.W.2d 477, 479–480 [1].

■ In reviewing the Commissioner's decision to determine whether it and his findings are supported by competent and substantial evidence we consider the evidence in a light most favorable to his decision, together with all reasonable inferences which support it. State ex rel. Favazza v. Ketchum, supra, l. c. 546 [4]; Baker & Theodore, Inc., v. Quinn, supra, l. c. 480 [6].

However, we are not bound by his construction or interpretation of the ordinance. Section 536.140, subsection 2(4), RSMo 1959, V.A.M.S.; Gilmore, et al., v. Thompson, et al., Mo.App., 413 S.W.2d 20, 22 [1] and cases there cited.

In support of the judgment of the circuit court affirming his decision, the Commissioner contends that there is competent and substantial evidence: (1) that Tom Boy has a financial interest in its affiliated retailers' businesses for the sale of intoxicating liquor, 5% beer; (2) that Tom Boy has given or furnished its retailers equipment, money and credit, other than ordinary commercial credit, for intoxicating liquor sold to the retailers; and, (3) that Tom Boy has contracted with its retailers obligating them to buy or sell the major part of products required by them from Tom Boy. Commissioner insists that for these reasons renewal of the license would be contrary to § 374.025, Revised Code of the City of St. Louis. Therefore, he says, his decision denying renewal of Tom Boy's wholesale 5% beer license, and the circuit court's judgment affirming his decision, should be upheld.

Underlying the Commissioner's contention is his erroneous interpretation of this section of the Code. For example, as to his finding that Tom Boy furnishes or gives credit to the retailers, the Commissioner would interpret this ordinance to mean that in its financial relations with a retailer who sells beer, a wholesale grocer can sell the retailer beer for cash or on ordinary commercial credit terms, but, if he does, he cannot sell groceries to the same

retailer on credit; that the grocery sales to that retailer must be for cash. He concludes that since Tom Boy has sold groceries to those retailers on credit it has acted contrary to the ordinance and for that reason its wholesale beer license should not be renewed. The following comments of the Commissioner near the close of his hearing are particularly revealing as to his general interpretation of the meaning of the ordinance:

"Mr. Quinn: Ordinary commercial credit for liquor and beer, not groceries. This section prohibits the wholesalers from giving credit to a retailer except credit for liquor or beer. Tom-Boy is giving credit for groceries. That is not liquor or beer."

\* \* \* \* \* \*

"Mr. Quinn: Let's put it this way. If J-G Distributing Company had a line of pretzels and potato chips and had their liquor drivers deliver them, as I interpret this ordinance, J-G can give credit for the liquor, \* \* \* but they would have to demand cash on delivery for the potato chips and popcorn because that is not liquor and beer."

 That is not the meaning and purpose of the ordinance. The purpose of the ordinance is to restrict and control financial relations between wholesalers and retailers of intoxicating liquor, to prevent the so-called tied-house, to prevent, in the liquor trade, financial control of the retailer by the wholesaler. *Northcutt v. McKibben*, 236 Mo.App. 605, 159 S.W.2d 699, 705 [6]. The ordinance means that the wholesaler may extend ordinary commercial credit for liquors sold; that the wholesaler shall not by indirection extend another type of credit for liquor sold, that is, by loaning, giving away or furnishing equipment, money or property. It does not mean that a wholesale grocer who sells 5% beer to a retailer for cash or credit cannot sell groceries to the retailer on credit.

The Commissioner points to the following evidence as being substantial evidence supporting his finding that Tom Boy, contrary to the ordinance, has a financial interest in its affiliated retail stores: (1) that the retailers are required to, and do, buy Tom Boy debentures which are subordinate to claims of general creditors, and that the amount of debentures held by retailers provides a substantial portion of Tom Boy's working capital and is almost equal to its net worth; (2) that a small number of its retail store operators own Tom Boy, Inc., common stock.

 This is not evidence, substantial or otherwise, that Tom Boy has a financial interest, direct or indirect, in its retailers; on the contrary, it is evidence that the retailers have a financial interest in Tom Boy. The ordinance does not prohibit the retailer from having such interest in the wholesaler.

The Commissioner points to the following evidence as being substantial evidence supporting his finding that Tom Boy, contrary to the ordinance, has given or furnished its retailers equipment, money or credit, other than ordinary commercial credit, for liquor sold: (1) that Tom Boy refunds to its retailers rebates received from manufacturers for advertising their nationally-known grocery, dairy and other like products, and rebates for quantity purchase discounts from manufacturers or distributors of bakery, dairy, drug and like products; (2) that Tom Boy pays annually to the retailers 5½% interest on its debentures; (3) that Tom Boy extends credit to its retailers for groceries; (4) that Tom Boy guarantees for its affiliated retailers equipment loans made by banks to the retailers.

 First, there is no evidence Tom Boy sells 5% beer to its retailers on credit. Furthermore, the advertising rebates and the quantity-purchase discounts refunded to the retailers are not *gifts* of money or credit in any sense; they are not gifts, directly or indirectly, in connection with intoxicating liquor sold to the retailer; they are earned rebates for participating with the manufacturer in cooperative advertising of the

latter's products and earned discounts for quantity purchases of products. These rebates reduced the cost of the product to the retailer, thereby increasing his profit. None of the products for which the rebates and discount were given was intoxicating liquor, so it may not be said they were inducements to purchase such liquor.

Interest paid by Tom Boy to its retailers on the debentures is interest earned by them on their investment; it is not, directly or indirectly, a gift of money or credit in connection with the sale or purchase of intoxicating liquor.

We have discussed and stated our opinion concerning the Commissioner's contention that Tom Boy's extension of credit to retailers for groceries sold is contrary to the ordinance and is substantial evidence supporting his decision and the circuit court's judgment; there is no need to discuss it further, other than to repeat that Tom Boy's sale of groceries on credit to its retailers who sell 5% beer is not contrary to the ordinance.

■ As to guaranteeing equipment loans for its retailers, the evidence is that Tom Boy had guaranteed such loans in the past, but, at the time of the hearing and the Commissioner's decision, it was not the guarantor or endorser of any loan for its affiliated retailers. There is no evidence that any of the loans it had guaranteed were in any way, directly or indirectly, for equipment to be used in the sale of intoxicating liquor, or otherwise connected or associated with the liquor business. Consequently, at the time of the Commissioner's decision, Tom Boy was not giving or furnishing credit for bank loans on equipment of any type, especially liquor equipment, and, its prior actions in this respect, under the evidence presented at the hearing, may not be said to be contrary to the ordinance.

■ In support of his finding that the retailers, contrary to the ordinance, are obligated to purchase the major part of products required by them from Tom Boy, the Commissioner points to the advertising contract. This contract requires the retailers to "maintain an adequate stock of the items advertised." But, this obviously does not require purchase of these items from Tom Boy. There is no evidence that the retailers are obligated to purchase from Tom Boy the major part of *any* products required by them and, more to the point, none that they are required to purchase *any* beer or, specifically, the 5% beer product of any particular brewer.

■ The ordinance which the Commissioner says prohibits Tom Boy from obligating its retailers to buy or sell the major part of *any* products required by them from Tom Boy applies to intoxicating liquor; not to other products. Moreover, even as applied to intoxicating liquor, that particular part of the ordinance which the Commissioner says Tom Boy violates, only prohibits the wholesaler from obligating the retailer to buy or sell the beer of a particular brewer.

No mention is made in the Commissioner's brief of his finding that Tom Boy's furnishing of exterior signs to its retailers contravened the provisions of the ordinance; in oral argument here, counsel stated that he was not relying on that finding to support the Commissioner's decision; hence, that point is abandoned and we do not consider it.

For the reasons stated, we hold that the findings and decision of the Commissioner are not supported by competent and substantial evidence, and are contrary to and unauthorized by the law.

The judgment is reversed and the cause remanded to the circuit court with directions to enter judgment in accordance with this opinion and remand the cause to the Excise Commissioner for reconsideration consistent with this opinion.

All concur.