In re Oscar Huning JACOBSMEYER and Virginia Reeves Jacobsmeyer, d/b/a Jack's Package Store, Debtors.

Bankruptcy No. 81–01122–S–13.

United States Bankruptcy Court,
W. D. Missouri,
Southern Division.

Aug. 14, 1981.

Gary A. Love, Springfield, Mo., for debtors.

Henry T. Herschel, Asst. Atty. Gen., Jefferson City, Mo.

MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Debtors, husband and wife, do business as Jack's Package Store, engaged in the retail sale of alcoholic beverages. In that business they are subject to the laws of the State of Missouri regarding sales of alcoholic beverages and also to the rules and regulations of the Department of Liquor Control of the State of Missouri as those rules and regulations apply to such sales.

On April 7, 1981, debtors filed a proceeding for the reorganization of their business under Chapter 13 of the Bankruptcy Code, Title 11, U.S.C. On May 1, 1981, debtors filed an application for an order to show cause why the Director of the Department of Liquor Control and several area wholesale liquor distributors should not be held in contempt for violation of Section 362. The verified application stated that the wholesalers told debtors that, because of past due balances, they were prohibited by regulation of the Director of the Department of Liquor Control, from filling even COD orders. Debtors submit that they would be unable to reorganize effectively if they could not purchase stock for sale and that the Bankruptcy Code pre-empts regulations of the Department of Liquor Control. The refusal of the wholesalers to sell even COD, debtors contend, is a violation of the automatic stay as an attempt to collect pre-petition debts. Debtors also suggest that the regulation is a restraint of trade.

The order to show cause was issued on May 15, 1981, setting a hearing on May 26, 1981. At that time debtors appeared in person and by counsel. The Director of Liquor Control appeared in person and by counsel. The wholesalers cited appeared by counsel. No party filed a pleading in response to the allegations of the application. Argument was heard. The Director agreed that there would be no enforcement of the regulation against sale by wholesalers until the Court had ruled on the order to show cause. The matter was taken under advisement pending the filing of briefs which have now been received.

Because the allegations of the verified application for order to show cause have not been controverted, the Court finds that there are no disputes of material fact. The evidence shows that the wholesalers have refused to sell to the debtors for fear of violating the regulations, thus putting in jeopardy debtors' ability to reorganize under the Code. There is, thus, a case or controversy before the Court.

The regulation in question, promulgated by the Director provides as follows:

Regulation No. 70–2.010

(5) Ordinary Commercial Credit.

(A) Malt Beverages. Ordinary commercial credit as used in the malt beverage and nonintoxicating beer industry shall be credit on such terms as shall require payment to be made by the retail licensee by the last day of the month for malt beverages or nonintoxicating beer which is delivered to such retail licensee on or after the first (1) day of the month and up to and including the fifteenth (15) day of the month next succeeding for malt beverages or nonintoxicating beer which is delivered to such retail licensee on or after the sixteenth (16) day of the month and up to and including the last day of the month. No brewer or wholesaler shall sell or deliver to any retail licensee any malt beverage or nonintoxicating beer while such retail licensee owes such brewer or wholesaler for any malt beverage or nonintoxicating beer beyond the period of time in this paragraph set forth.

(B) Intoxicating Liquor Other Than Malt Beverage. Ordinary commercial credit as used in the intoxicating liquor industry, other than the malt beverage industry, shall be credit on such terms as shall require payment to be made by the retail licensee within thirty (30) days after the delivery of any intoxicating liquor, other than malt beverage, to such retail licensee. No distiller, wholesaler or wine maker shall sell or deliver to any retail licensee any intoxicating liquor, other than malt beverage, while such retail licensee owes such distiller, wholesaler, or wine maker for any intoxicating liquor, other than malt beverage, beyond the period of time in this paragraph set forth.

The point of beginning of this analysis is *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In that case, the Supreme Court held that the Supremacy Clause causes a discharge in bankruptcy to prevail over state law, a portion of the Arizona Motor Vehicle Safety Responsibility Act, which provides that a discharge in bankruptcy does not discharge a debtor's obligation to pay a debt arising from a

motor vehicle accident where the debtor was at fault and not insured. The Court concluded that ruling otherwise would frustrate the doctrine of fresh start, an underlying proposition of bankruptcy law. While the question here is one of the application of a state regulation rather than state statute, for all practical purposes the regulation has the force of law, Cf. Section 311.070, R.S.Mo.1969, and was promulgated by the Director in his official capacity. Section 311.660, R.S.Mo.1969.

The Court, in *Perez*, supra, set out guidelines for resolution of the issue posed in this proceeding.

"Deciding whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." 402 U.S. at 644, 91 S.Ct. at 1708.

No Missouri Court has construed, in a definitive manner, the language of Section 311.070 or of the regulations here in question. In a case dealing with an ordinance of the City of St. Louis which the Court noted was "in substance, the same as Section 311.070," *Tom Boy, Inc. v. Quinn*, 431 S.W.2d 221, 223 (Mo. en banc 1968), the Court explained that:

"The purpose of the ordinance is to restrict and control financial relations between wholesalers and retailers of intoxicating liquor, to prevent the so-called tied-house, to prevent, in the liquor trade, financial control of the retailer by the wholesaler ... The ordinance means that the wholesaler may extend ordinary commercial credit ... [but] shall not by indirection extend another type of credit for liquor sold ... by loaning, going away or furnishing equipment, money or property." 431 S.W.2d at 226.

There is no question that the thrust of the state statutes regulating the sale of alcoholic beverages is to maintain the separateness of the various manufacturers, wholesalers and retailers. The Courts of Missouri have recognized this purpose in various decisions. *Northcutt v. McKibben*, 236 Mo.App. 605, 159 S.W.2d 699 (1942); *Passler v. Johnson*, 304 S.W.2d 903 (Mo. 1957); *Brown-Forman Distillers Corporation v. Stewart*, 520 S.W.2d 1, 7 (Mo. en banc 1975). This Court accepts the principle enunciated by the Courts of the State of Missouri that the purpose of the statute and regulation is to prevent wholesalers from controlling retailers by extraordinary extension of credit.

Reasoning from that point, the Director contends that enforcement of the regulation is a proper exercise of the police power of the State under Section 362(b)(4) and may not be stayed by the Court. The Director argues that the fact that the enforcement of the regulations may result in the collection of debt owed wholesalers is an unintended consequence of the regulation. The Director has no interest, per se, in the collection of debt. He suggests that the debtors may patronize other wholesalers and therefore not cause wholesalers whom they owe to violate the regulation.

In their verified application and in argument, debtors contend that the practical result of the regulations, without regard to the ostensible purpose, is that they must pay pre-petition debts in order to do business under the Chapter 13 plan. They submit that these payments will be preferences, since the wholesalers are unsecured. Enforcement of the regulations frustrates the ability of the debtors to reorganize and to carry on their business.

Section 362(b)(4) provides, in part, that "The filing of a petition under section 301 ... does not operate as a stay—

(4) Under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power."

In a recent decision, the Court of Appeals for the Eighth Circuit distinguished between conduct of the State in the enforcement of police powers and actions in an economic sense as representative of the in-

terests of its citizens. *In re State of Missouri v. U. S. Bankruptcy Court*, 647 F.2d 768 (8th Cir. 1981). In that case, grain held in elevators located in the State of Missouri was subject to administration in a proceeding in the United States Bankruptcy Court in Arkansas where the debtor who owned the elevators had filed. The Missouri Department of Agriculture initiated receivership actions against the warehouses located in Missouri and began a process of liquidating the assets of the debtor located in the State. A dispute arose as to ownership of the grain and as to which entity, the bankruptcy trustee or the Department of Agriculture, had the right to liquidate the assets. The Department attempted to obtain a writ of prohibition from the United States District Court for the Eastern District of Arkansas. The application was denied and the denial was sustained by the Court of Appeals.

"In light of the legislative history and court decisions under the earlier bankruptcy act, we believe that the term 'police or regulatory power' refers to the enforcement of state laws affecting health, welfare, morals and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court . . .

We conclude that Missouri's grain laws, although regulatory in nature, primarily relate to the protection of the pecuniary interest in the debtor's property and not to matters of public safety and health. Missouri's laws, by governing the operation and liquidation of grain warehouses, directly conflict with the control of the property by the bankruptcy court and, therefore, do not fall within the section 362(b)(4) exception." 647 F.2d at 776.

The Court went on to say that "even if the automatic stay provision did not apply to the Missouri proceedings, the bankruptcy court possesses power in its discretion to enjoin state courts, officials and agencies from interfering with assets in the custody of the bankruptcy court." 647 F.2d at 777.

The issue before this Court is much more narrow than that present in *State of Missouri v. U. S. Bankruptcy Court*, supra.

Here, the state purpose of keeping various liquor activities financially separated is furthered by a regulation which limits the amount of credit which a wholesaler can extend to a retailer. The regulation clearly reaches conduct affecting welfare and morals and only indirectly protects pecuniary interests. In this case, debtors have failed to pay overdue accounts. The wholesalers could not sell to them until the accounts were current or they would violate the regulation.

By filing a Chapter 13 proceeding, debtors have announced that they desire to rehabilitate their business. They can only do so by purchasing from the various wholesalers who, because of the state regulation, cannot sell to them. They must purchase from these wholesalers because they must have the brands which these wholesalers distribute to be competitive in the package store business. Thus, the unintended result of the state statutes and regulations is to frustrate the purposes of Chapter 13 of the Bankruptcy Code.

The teaching of *Perez*, supra, is that generally enforcement of state law will not be permitted where such enforcement frustrates the purposes of the Bankruptcy Act. Obviously there are exceptions. There is, for example, no question that the debtors must operate in accordance with the laws of the state. See, for example, *Gillis v. State of California*, 293 U.S. 62, 55 S.Ct. 4, 79 L.Ed. 199 (1934) but even there the Court left open the situation where a state law conflicted with laws of the United States. Thus, debtors could not sell liquor in the State of Missouri without appropriate licenses, unless the licenses were refused for the reason that the applicants were in bankruptcy. See Section 525, Title 11, U.S.C. Nor, having been properly licensed, could they generally operate in disregard of the statutes and regulations, both state and local, governing the sale of liquor. Thus, the Court in *Colonial Tavern, Inc. v. Byrne*, 420 F.Supp. 44 (D.C.Mass.1976) properly refused to enjoin the suspension of a license for violation of closing hours.

But here the regulations, if enforced would require debtors to pay prepetition debts as a condition of performing under a Chapter 13 plan. Both the treatment of prepetition debts and performance in accordance with a plan under Chapter 13 form the basis of much of the Bankruptcy Code and are of fundamental concern to the Court in its administration of proceedings under the Code. Thus, the Court cannot allow state law to determine the treatment of prepetition debts except insofar as the differences in treatment are authorized by the Code. The enforcement of this regulation would cause debtor to pay in full certain unsecured debts, resulting in preferential or discriminatory treatment, or both, of some creditors in relation to others.

The Director of Liquor Control, therefore, is enjoined from enforcing against the wholesalers named herein, the regulations against credit insofar as such enforcement causes the debtors to pay prepetition debts in order to obtain goods for the operation of their business. The debtors, of course, must purchase from wholesalers on a cash basis. See generally 11 U.S.C. Sections 1304, 1305. There should be no violation of the regulations while debtors operate under the jurisdiction of the Court in accordance with a confirmed plan.

At the same time, should the Director have evidence of a tied-house arrangement, or other conduct in violation of the State's statutes or regulations, he is free to take appropriate action.

In light of the foregoing, it is unnecessary to reach the question of whether the regulation violates anti-trust laws.

This Order constitutes Findings of Fact and Conclusions of Law pursuant to the requirements of Rule 752, Bankruptcy Rules.

SO ORDERED this 14th day of August, 1981.