Alvin SMITH d/b/a Alvin Smith Heating
and Air Conditioning Company,
Plaintiff-Appellant,

v.

MISSOURI STATE HIGHWAY COMMIS-
SION, Defendant-Respondent.

No. 26022.

Missouri Court of Appeals,
Kansas City District.

Dec. 4, 1972.

Donald S. Singer, Carter & Newmark, Clayton, for plaintiff-appellant.

Robert L. Hyder, Thomas E. Cheatham, State Highway Commission, Jefferson City, for defendant-respondent.

Before DIXON, P. J., and CROSS, and SWOFFORD, JJ.

SWOFFORD, Judge.

This is an appeal from a judgment of the Circuit Court affirming a ruling of the State Highway Commission denying the appellant benefits under the Federal Highway Relocation Assistance Act of 1968, 23 U.S.C.A., Chapter 5, Section 501 et seq.

■ We are met at the outset with a challenge to our jurisdiction. Respondent asserts that we lack jurisdiction because the proceeding before it was not such an administrative proceeding as to permit judicial review, and that the appellant, in any event, is precluded from seeking such review because the action of the Commission did not affect his "private rights" as required for review under the Constitution, statutes and rules.

So far as the briefs and our independent research disclose, the appellate courts of Missouri have not heretofore been called upon to interpret or apply this particular federal law, and it will be necessary to do so here to determine the jurisdictional question.

As an amendment and addition to the Federal Highways Act of 1958, Congress enacted a new chapter known as "Highway Relocation Assistance", 23 U.S.C.A., Chapter 5, Section 501 et seq., effective August 23, 1968. This is the statute which now commands our attention.

The purpose of this law, as applicable here, is stated in Section 501, in the following language:

"Sec. 501.  Declaration of policy

Congress hereby declares that the prompt and equitable relocation and re-establishment of * * * businesses * * * displaced as a result of the Federal highway programs and the construction of Federal-aid highways is necessary to insure that a few individuals do not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole. Therefore, Congress determines that relocation payments and advisory assistance should be provided to all persons so displaced in accordance with the provisions of this title."

Section 502 provides that the Secretary of Transportation shall withhold approval of state-federal highway projects unless he receives assurance that the purposes and provisions of the act are being carried out and the payments made.

The administration of this act is placed in the hands of the various states. Section 503, provides:

"Sec. 503.  Administration of relocation assistance program

In order to prevent unnecessary expenses and duplication of functions, a State highway department may make relocation payments or provide relocation assistance or otherwise carry out the functions required under this chapter by utilizing the facilities, personnel, and services of any other Federal, State, or local governmental agency having an established organization for conducting relocation assistance programs."

Section 504 provides, in part:

"(a) The Secretary *shall approve, as a part of the cost of construction* of a project under any Federal-aid highway program, which he administers *the cost of providing the payments and services described in Section 502,* except that notwithstanding any other law, the Federal share of the first $25,000 of such payments to any person, on account of any real property acquisition *or displacement occurring prior to July 1, 1970,* shall be increased to 100 per centum of such cost." (Emphasis supplied)

Section 511(a) (3) provides that any person aggrieved by a determination as to eligibility for a payment or the amount of

payment may have his application reviewed by the head of the State agency making such determination.

In accordance with these provisions of the federal law, the State of Missouri through the respondent State Highway Commission undertook the administration of this law as it was applicable in Missouri.

The appellant, Smith, operated a business on Highway 30 at High Ridge in Jefferson County, Missouri. Because of improvements in process on Highway 30, it became necessary for him to relocate his business. The net result of this was that he went out of business. The details of this will be discussed later in this opinion. For the purpose of this discussion of jurisdiction, suffice it to say that appellant filed a claim for relocation payments with the respondent, which claim was denied under date of June 24, 1970. A hearing was held before a Hearing Examiner, E. Brzezinski, on September 30, 1970, and apparently disallowed. Thereafter and on January 12, 1971, the Appeal Committee of the State Highway Commission met and considered the transcript evidence and denied appellant's claim.

Thereafter, a Petition for Review of Final Decision of Administrative Agency was filed in the Circuit Court of Cole County, Missouri under Sections 536.100 and 536.110 V.A.M.S., and Rules 100.03 and 100.04, Rules of Civil Procedure, V.A.M.R., and on January 4, 1972 said court entered a judgment sustaining the order of the Appeal Board of the Missouri State Highway Commission and the appeal to this court followed in proper form and in due course.

It is apparent that under Chapter 5, Section 503, 23 U.S.C.A., the administration of the Highway Relocation Assistance Act was placed in the State Highway Commission of Missouri and it undertook such administrative duties. It is equally clear that the appellant has exhausted all administrative remedies available to him at that level. Is he foreclosed from seeking judicial review of those proceedings?

Article 5, Section 22, Constitution of 1945, V.A.M.S., provides:

"Section 22. All final decisions, findings, rules and orders of any administrative officer or body * * * which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law. * * * "

Section 536.100 V.A.M.S. provides:

"Party aggrieved entitled to judicial review

Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case * * * shall be entitled to judicial review thereof. * * * " (Rule 100.03, Rules of Civil Procedure)

Section 508(b), Chapter 5, 23 U.S.C.A., provides:

"Nothing in this chapter shall be construed to prohibit any person from exercising any right or remedy available to him under State law with respect to any action of a State agency in carrying out this chapter."

In United States v. Braddy, Dist. Oregon, 320 F.Supp. 1239, the United States sought a declaratory judgment and an injunction concerning the meaning of "displaced person" as used in the Highway Relocation Assistance Act.

The Braddys, after exhausting their administrative remedies, filed suit in the Oregon state court against the State Highway Commission wherein they sought relocation assistance as displaced persons under the act here involved. The United States obtained a temporary injunction against further proceedings in the state court and asked for a declaration as to proper interpretation of the term "displaced person" under the federal act. The court vacated the injunction and declined motion for summary judgment and dismissed the cause

without prejudice. The court said, 1.c. 1241:

"If the Highway Commission makes a decision after a weighing of evidence and an exercise of discretion in determining whether a particular move meets the statutory requirement, such an agency decision should be overturned only upon a showing that it was not based on evidence. But where, because of an arbitrary rule, the State Highway Commission did not examine into the facts or make an informed decision on the issue of 'reasonable expectations' *the decision is reviewable on its legal sufficiency.*" (Emphasis ours)

Other decisions of the federal courts which recognize the power of the courts to control or review the administrative procedures as set up in the Highway Relocation Assistance Act of 1968 are Hanley v. Volpe, Dist. Wisc., 305 F.Supp. 977, 322 F.Supp. 1306, and Concerned Citizens for Preservation of Clarksville v. Volpe, CCA5, 445 F.2d 486, 494–495.

Congress has seen fit to delegate to the State Highway Commission the administrative duties inherent in the Highway Relocation Assistance Act, and in so doing, has specifically reserved to "any person" the right to resort to remedies available to him under state law (Sec. 508(b), 23 U.S.C.A., supra); the respondent commission in response to such delegated authority undertook to determine appellant's rights to relocation assistance, and appellant exhausted all of the administrative remedies thus afforded him before he asserted his right to seek judicial review under state law. We hold that such judicial review of the action of respondent Highway Commission was authorized and appropriate.

Neither do we agree with the respondent, that appellant's rights involved in this entire proceeding, are not "private rights" or that the determination thereof was not a quasi-judicial *action, both as contem*plated by Article 5, Section 22, of the Constitution of Missouri. The right of appel-lant for assistance and compensation for the necessary relocation of his business was assuredly not a public right.

In the case of State ex rel. State Highway Commission v. Weinstein, Mo.Sup. en banc, 322 S.W.2d 778, a public utility water company had been ordered by the State Highway Commission to relocate its water mains on state-owned highway property. It sought judicial review of this order under Chapter 536 V.A.M.S. and Article 5, Section 22, of the Constitution, and the commission sought to prohibit such review. In discharging its preliminary rule in prohibition, the Supreme Court held that the order was a proper subject for judicial review under the provisions of both the constitution and the statutes, since the water company's private rights and privileges were affected by a quasi-judicial ruling of the commission.

The court in Weinstein pointed out that the right to judicial review was not limited to matters exclusively affecting "private rights" but also included those matters affecting "privileges" and pointed out that Section 536.010 V.A.M.S. states:

"(3) 'Contested case' means a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by statute to be determined after hearing."

For further decisions relating to private rights as distinguished from public rights, see State ex rel. Police Retirement System of City of St. Louis v. Murphy, Mo.Sup. en banc, 224 S.W.2d 68, 72–73; Smith v. Hendricks, Mo.App., 136 S.W.2d 449, 455.

Section 536.100 V.A.M.S. has been held to be a legislative declaration of the public policy of Missouri.

In discussing this section, the court said in In the Matter of the Assessment of: St. Joseph Lead Co. v. State Tax Commission, Mo.Sup., 352 S.W.2d 656, at 1.c. 660:

"* * * The act does not mention or distinguish between what the appellant calls public and private rights and public

policy is again stated and the emphasis is upon 'Any person * * * aggrieved * * * in a contested case.' * * *"

We hold that the order of respondent denying appellant's claim under the Federal "Highway Relocation Assistance" Act of 1968 was subject to judicial review and that, therefore, we have jurisdiction of this appeal.

The Appeal Committee of the State Highway Commission consisting of three members (one of whom was Robert L. Hyder, now on the brief for respondent in the proceeding before us) reviewed the record of the evidence before the hearing examiner and on January 12, 1971 denied appellant's claim upon the basic findings:

(1) The appellant's business began operation in August 1969, so that the "required two years of existence" was not met;

(2) Claimant could relocate his business without a substantial loss of his existing patronage.

■ We are mindful of the general rules governing the permissible scope of our review of administrative decisions as imposed by statute and decisional law. It is elementary that we cannot impose our judgment or discretion for that of the administrative body in the area of contested facts or credibility of witnesses but are only authorized to disturb its ruling when such is not supported by substantial evidence or when it is clearly contrary to the overwhelming weight of the evidence. Miller v. Ralston Purina Co., 341 Mo. 811, 109 S.W.2d 866; Merriman v. Ben Gutman Truck Service Inc., Mo.Sup., 392 S.W.2d 292, 296.

■ A corollary of this rule is, however, that where the ruling of the administrative body is clearly an interpretation or application of law, such is not binding on us, and in such case it is within our province,

and indeed it is our duty, to review and correct erroneous administrative decisions.

■ Those basic rules are simple to express but often difficult to apply. The courts have found that the classification of administrative decisions into the categories of conclusions of law and conclusions of fact "is historically sound and judicially useful", but it has also been recognized that "the two terms are not amenable to precise definition, and that administrative decisions ordinarily involve both such kinds of determination." Gordon v. Puritan Chemical Company, Mo.App., 406 S.W.2d 822, 826.

For example, in Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, at 1.c. 66, the court said:

" * * * And where the finding of ultimate fact is reached by the application of rules of law instead of by a process of natural reasoning from the facts alone, it is a conclusion of law and subject to our reversal. (cases cited)"

With these rules in mind, we have carefully reviewed the transcript of testimony and the evidence presented to the hearing examiner of the respondent and have reached the conclusion that there was no real or substantial conflict in the facts of this case; that the appeal board was and this court now is presented with basically a question of the application of those facts to the provisions of the Federal Highway Assistance Act of 1968, or, conversely, a duty to apply the law in the federal statute to the facts before us.

Only two witnesses testified before the hearing examiner, the plaintiff, Alvin Smith, and Joseph Hahn, a relocater agent, Missouri State Highway Department. Their testimony may be summarized as follows:

Alvin Smith had been engaged in the heating and air conditioning business for a period of 9 years. For 7 years prior to

August, 1969, he was engaged in a 50-50 partnership between himself and one Joe Dennis. The partnership did business under the name of "Murphy Heating & Plumbing Company". Smith was the active managing partner of this operation and the net profits of the partnership were divided equally. The operation was conducted from a site located on Highway 30, which is referred to in the record variously as "High Ridge", "Joe Dennis Plaza", and the "Murphy" area. The facilities used by the partnership consisted of an office 12' x 12' adjacent to the highway; a parking area of approximately 200' x 200'; and a warehouse and shop located approximately 100 feet from the office and accessible by foot or automobile.

In the warehouse area, there was a space 25' x 40' used by Smith for sheet metal fabrication of various heating and air conditioning ducts and appliances, and an adjoining space of 30' x 30' which was used for storage of material, window air conditioners and other items necessary to the operation of the business.

There was no other sheet metal operation in the area of the business.

Smith testified that he also operated the plumbing part of the business.

Smith offered into evidence bids for jobs which had been obtained over the period from 1964 to 1969, which showed that 90% of the work of the company was within a radius of 5 or 6 miles of the office. About 70% of his work was done for general contractors. He introduced his personal income tax returns which showed his actual personal income from the Murphy Plumbing & Heating Company in 1967 and for 1968. In 1969, these returns showed his individual income from Murphy, from A & L Excavating Company (an individual operation started in 1968), and from Alvin Smith Heating & Air Conditioning Company.

In August of 1969, Smith and Dennis terminated the actual partnership of Murphy Plumbing & Heating Company, and Mr. Dennis took the plumbing part of the business and Mr. Smith retained the heating and air conditioning part of the business, thereafter conducting this operation under the name of Alvin Smith Heating & Air Conditioning Company. The termination of the partnership was not brought about by reason of the highway improvement.

Smith continued to use the same physical facilities at High Ridge, paying the same rental therefor, i. e. $80.00 per month. He was in the process of moving from this location at the time of the hearing in September, 1970.

The necessity to move was brought about by reason of highway improvements, which would destroy the utility of the property.

Smith testified that he began looking for other locations "all along" Highway 30 as early as August of 1969, but that he could not find any satisfactory location for his business.

The only specific evidence before us as to possible relocation sites is:

(1) A property owned by Dennis which consisted solely of a warehouse in an industrial complex on Lake Drive, where the rent was $180.00 per month (to be raised to $200.00 per month in 1971) and with no existing office facilities. Smith testified that he could not afford to pay such rent and that there were competitors in the same complex;

(2) The Causey building site. This was an L-shaped space renting for $100.00 per month and containing about 1500 square feet, the only access to the warehouse and shop part of the property was through a small door in an office, and there were no windows in the entire area. Smith testified that this would be completely unsatisfactory for his operation. Also, there was a competitor directly across the street.

Smith testified that after his futile efforts to find a relocation site, he moved his operation to his home to finish existing jobs, but was taking no further bids or business because of lack of facilities. He testified that he had received no relocation funds and that he estimated his loss of business in excess of $5,000.00.

He admitted having signed State Exhibit No. 1 in September of 1970, which was a request for moving expenses to the Causey building, but that he did not intend to move there because the facilities were insufficient. He wanted to move to an area known as Eureka. He told Hahn at the time he signed Exhibit No. 1 that he did not know if he would move to the Causey building or not, and this statement was corroborated by Mr. Hahn in his testimony.

Joseph Hahn testified that he was a relocater agent for the Missouri State Highway Department; that he had presented State's Exhibit No. 1 for Smith's signature in September, but that the form had been filled out by one Robert Skaggs, another relocater, and that at the time Smith signed the exhibit, Smith stated to him he had not decided where he was to move and that he, Hahn, knew that Smith had not rented space in the Causey building at that time.

Mr. Hahn's duties were to survey areas for relocation sites and make suggestions to persons seeking the same. He first learned of Smith's desire to relocate in February of 1970.

He confirmed the availability of the new Dennis property on Lake Drive at $180.00 per month rent, and the available space in the Causey building. Hahn also mentioned another Dennis property which consisted of a smaller warehouse and a 30′ x 30′ area in the Hyman building on Highway 30, and another 30′ x 30′ space in the High Ridge area; and a property in the Buran Plaza Shopping area, which had been available, but had been rented by the Armstrong Heating Company. No detailed description of these properties was offered and so far

as the record shows, Smith was never advised of them nor was he cross-examined about them, nor is there any substantial evidence that any of them would be suitable for his operations.

Upon these facts, we have no difficulty in holding that there is no substantial evidence to support the Commission's approval of the examiner's finding:

"* * * that the business involved had begun operation in August of 1969, so that the required two years of existence was not met * * *"

The overwhelming and undisputed evidence is that Smith, the plaintiff, had been engaged in the same business at the same location for a period of seven years. The only change in his operations which occurred in March of 1969 was that he ceased to do business as a partner, owning 50%, under the fictitious name of "Murphy Heating and Plumbing Company" but continued doing basically the same business as sole owner under the name of "Alvin Smith Heating and Air Conditioning Company" and no longer did any plumbing business. His claim of loss and for relocation payment provided by the federal statutes is his *individual* claim not that of a partnership or corporation and his loss and damage is *individual* and *personal* because of *his* displacement.

The change in his operations in March of 1969 was no more the commencement of a new business than if he as a manufacturer's representative, for example, had dropped a certain line of products for another, or arranged for new financing, or in any other way altered the details or the extent of his ownership of his business without disturbing its basic operation. We hold that the plaintiff Smith qualifies as a "person" sought to be protected by the Highway Relocation Assistance Act, as such term is defined in Section 512, 23 U.S. C.A., namely:

"As used in this chapter—

(1) The term 'person' means—

(A) any *individual*, partnership, corporation or association which is the *owner of a business*; * * *" (Emphasis ours)

He is obviously such a person whose injuries, resulting from displacement, were sought to be ameliorated by the Declaration of Policy as asserted by Congress in Chapter 5, Section 501, 23 U.S.C.A., of the Highway Relocation Assistance Act of 1968, supra.

■ Neither do we find any provision of the federal statute that requires that such person be engaged in the exact business or at the exact location for a period of two years or for any specific length of time. The reference to the two-year period in Chapter 5, Section 505, 23 U.S.C.A., is obviously a method of computing financial loss or damages within the limit of $5,000.-00. The computation of lost future profits of a business has always been legally and factually perplexing. Congress obviously adopted the two-year rule to simplify this procedure in the area covered by the act.

Chapter 5, Section 505, 23 U.S.C.A., Relocation Payments, provides first for payment of actual reasonable expenses in moving (a) and follows with this provision:

"(c) Optional payments—business and farm operations.—

Any displaced person who moves or discontinues his business * * * who elects to accept the payment authorized by this section in lieu of the payment authorized by subsection (a) of this section, may receive a fixed relocation payment in an amount equal to the average annual net earnings of the business * * *, or $5,000, whichever is the lesser. * * * For purposes of this subsection the term 'average annual net earnings' means one-half of any net earnings of the business * * * before * * * taxes, during the two taxable years immediately preceding the taxable year in which such business * * * moves * * *."

■ We have held that plaintiff had been involved in the operation of his business for a period of seven years prior to September, 1970, so that even if the above-quoted statute is a declaration of legislative intent as found by the examiner and approved by the commissioner (which theory we do not adopt), it would have no application to the case before us.

The two-year provision is pertinent here to reach a computation of the relocation payments due the plaintiff, if he is otherwise qualified.

As to his qualifications for such payments, there remain two points for our decision. The first of these is, whether or not the finding of the examiner, approved by the commission,

"that the claimant could relocate his business without a substantial loss of his existing patronage"

is supported by substantial evidence. The statutory source for this finding is also found in Chapter 5, Section 505, 23 U.S.C.A., relating to Relocation Payments, which provides:

"(c) * * * In the case of a business, no payment shall be made under this subsection unless the State agency is satisfied that the business (1) cannot be relocated without a substantial loss of its existing patronage, * * *"

■ Since the act secures to the displaced person the existing rights and remedies available to him under the state law, Chapter 5, Section 508(b), 23 U.S.C.A., supra, and since we have held that these rights and remedies thus secured include the right to judicial review of the administrative decision, we must conclude that the "satisfaction" of the state agency referred to in Section 505(c), 23 U.S.C.A., supra, must not rest upon caprice, conjecture or guesswork, but rather, upon substantial competent evidence. The finding here does not meet that test.

■ There is nothing stated nor implicit in the Highway Relocation Assistance Act that requires a displaced person to accept relocation under conditions which would make it economically unsound, to move from the area of his source of business, nor operate under physical conditions which impede or prevent efficient operation. These matters are obviously within the knowledge of the person operating the business rather than the relocater who attempts to assist but is necessarily without qualified knowledge. The ultimate decision must be that of the person dislocated. Congress recognized that in some instances such person would be forced out of business, Chapter 5, Section 505(c), 23 U.S.C.A. provides:

"(c) Optional payments—businesses and farm operations.—

Any displaced person who moves *or discontinues his business* * * *" (Emphasis supplied)

There is no substantial evidence in the record before us that the plaintiff could have relocated in any of the properties available and operated his business economically and efficiently, or retain his existing patronage. His testimony was that none of them afforded him that opportunity and that he was therefore required to discontinue his business. This evidence was not effectively disputed. We do not consider that Mr. Hahn's (the relocater) testimony was qualified, specific or substantial on this subject.

Adopting the general rule relating to judicial review of administrative proceedings, we find that there was no substantial or competent evidence upon the whole record which had such probative force upon this issue as could reasonably lead to the finding under consideration. That degree of proof was essential. Old Fortress, Inc. v. Myers, Mo.App., 453 S.W.2d 692, 696; Baker & Theodore, Inc. v. Quinn, Mo.App., 400 S.W.2d 477, 480; Davis v. State Department of Public Health and Welfare, Mo.App., 274 S.W.2d 615, 617–618.

We, therefore, conclude that the finding of the examiner, adopted by the Appeal Board, that the plaintiff could relocate his business without a substantial loss of existing patronage is not supported by substantial or competent evidence.

■ The remaining matter for our decision is the effect of State's Exhibit No. 1, which purports to be a request by plaintiff for moving expenses to the Causey building. We have outlined the evidence with reference to this document and we do not believe that under any principle of law, equity or evidence, can this document rise to the dignity of a formal, informed election on the part of plaintiff under the options open to him under Chapter 5, Section 505, 23 U.S.C.A. We need consider it no further.

■ Various partnership and individual income tax returns were offered into evidence (and some thereafter withdrawn) but we have not been favored by counsel filing these as part of the record before us. There appears to be some difference between the oral testimony of plaintiff at the hearing and the figures shown in appellant's brief. While these do not seem to be substantial, we are unable from the record to accurately apply the formula for relocation payments which are due plaintiff, as set forth in Section 505, 23 U.S.C.A. This is a burden which should properly rest elsewhere, in any event.

In accordance with the views herein expressed, the order and judgment of the Circuit Court affirming the order of the Appeal Board of the Missouri State Highway Commission is reversed and the cause remanded with directions to the Circuit Court to set aside its judgment and to enter a new judgment reversing the order of the Appeal Board of the Missouri State Highway Commission and to remand the cause with directions to enter a judgment

in favor of the claimant, Alvin Smith, for relocation payment in accordance with Chapter 5, Section 505(c), 23 U.S.C.A., Highway Relocation Assistance Act of 1968.

All concur.