Ada R. HILL, Appellant,

v.

**STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE,** Respondent.

No. 57683.

Supreme Court of Missouri, En Banc.

Dec. 10, 1973.

James L. Muller, The Legal Aid and Defender Society of Greater Kansas City, Inc., Kansas City, for appellant.

Elmore G. Crowe, Edward D. Summers, Jefferson City, for respondent.

FINCH, Judge.

This is an appeal from a Circuit Court judgment affirming the decision of the Director of the State Department of Public Health and Welfare to uphold his Department's temporary suspension of appellant's permanent and total disability (ATPD) benefits. We reverse and remand with directions.

Appellant was placed on general relief by the Jackson County office of the Division of Welfare in March of 1965. In June of that year she began receiving ben-

efits under § 208.051[1] because of a permanent and total disability. Thereafter, pursuant to § 208.010.2(1)(a) and (b), the office suspended her aid for a period of approximately five months on the ground that she had transferred an interest in real estate without receiving fair and valuable consideration therefor.

Appellant appealed to the Director of the Department as authorized by the statute, and on June 6, 1968, a hearing was held before a referee appointed by the Director. The evidence disclosed that appellant had been the owner by inheritance from her parents of an undivided 1/15th interest in 120 acres of farmland in the State of Louisiana, and that in April of 1965 she joined with four of her brothers and sisters in conveying their respective interests in said property to another brother, Monroe Malone, in return for the latter's oral, unsecured promise to pay each of them $400.00 within a week. A brother of appellant testified that Monroe had stated that he had the money in the bank with which to make the payments, and that they took him at his word and went ahead and executed the deed. The value of the farm at that time was around $50.00 per acre, so that the value of appellant's 1/15th interest in the 120 acres was approximately $400.00.

Monroe Malone then experienced financial difficulties brought on by his partner in the cattle business selling their cattle and pocketing the proceeds. As a result, he defaulted in his promise to pay the $400.00 he had agreed to pay each for their interests in the farm.[2] Appellant testified that when she transferred her interest in the property to Monroe Malone, she fully expected to be paid the $400.00 and that she did not make the transfer for the purpose of enabling her to stay on the welfare roll.

1. All statutory references are to RSMo 1959, V.A.M.S., unless otherwise indicated.

2. He mortgaged the farm and his own property for $3000.00 in an effort to solve his financial difficulties. Two years later, he

had reduced the mortgage to $2560.00, but was threatened with foreclosure. He deeded the property back to appellant and her brothers and sisters. Appellant then conveyed to two other brothers who paid off the mortgage.

The Director decided adversely to appellant, and in so doing made these findings:

"In April, 1965, (claimant) joined with four of her brothers and sisters in the execution of a deed conveying the undivided $\frac{1}{15}$ interest of each of them in a 120 acre tract of land in the state of Louisiana to another brother, Monroe Malone. The brothers and sisters were tenants in common of this land as heirs of their deceased parents. The reasonable value was $50.00 per acre, and each of the grantors was to receive $400.00 for his or her interest. The deed was delivered but none of them ever received any money."

After the above finding of facts, the Director then concluded that appellant had transferred her interest in the real estate without receiving fair and valuable consideration within the meaning of § 208.010.-2(1)(a) and hence was ineligible to receive public assistance, the period of ineligibility to be determined by the formula set forth in the statute.

Appellant appealed from this decision to the Circuit Court of Jackson County, which affirmed the decision of the Director, holding that the claimant had a fair hearing and that the decision of the Director was not arbitrary or unreasonable. An appeal to this court followed.

At the outset, we must determine whether we have jurisdiction of this appeal. Appellant asserts that we do have on the basis that the case involves construction of several constitutional provisions, including Art. V, § 22,[3] which provides as follows:

"All final decisions, findings, rules and orders of any administrative officer or body existing under the Constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record."

The Circuit Court, as part of its findings and conclusions, ruled, in reliance on Ellis v. State Department of Public Health and Welfare, 277 S.W.2d 331 (Mo.App.1955), that benefits of the type in question are not payments to which one is entitled as a matter of right but rather they are gratuities given by the state. The Ellis case subsequently was transferred to and heard by this Court and is reported at 365 Mo. 614, 285 S.W.2d 634 (banc 1955). In that opinion the Court held that welfare benefits are not "private rights" so as to be covered by Art. V, § 22, and hence that said constitutional provision was inapplicable.

On this appeal, appellant contends that rights such as those asserted herein by her are not mere gratuities but are in fact private rights within the provisions of Art. V, § 22, and that she is entitled to a review thereunder of the decision of the Director. In other words, it is the contention of appellant that we should overrule this Court's holding in Ellis v. State Department of Public Health and Welfare, supra (also cases such as Allen v. State Department of Public Health and Welfare, 479 S.W.2d 183 (Mo.App.1972)), and hold that Art. V, § 22 is applicable.

■ We conclude that this clearly presents a question of constitutional construction, namely, the meaning of the term "private rights" as contained in Art. V, § 22, and whether we should overrule our previous construction thereof. Therefore, this court does have jurisdiction.

Having so concluded, we proceed first to reexamine our construction of Art. V, § 22 so as to settle the nature and extent of judicial review which we should utilize in this case.

In Ellis (285 S.W.2d 634), the court reviewed decisions from various other states

3. All constitutional references are to Const. of Mo., V.A.M.S., unless otherwise indicated.

which had held that benefits under public assistance acts were gratuities which the state legislature may abolish at any time, that recipients have no vested rights in such grants, and that a state may even deny resort to judicial review of administrative action in granting or denying such benefits. The court then concluded that review of the department's action on claims for benefits should be limited to that provided in the act itself in §§ 208.-100(5) and 208.110, and that Art. V, § 22 was not applicable. In so holding, the court said, 285 S.W.2d l. c. 638: "Our conclusion is that 'private rights' covered by Art. V, Sec. 22, 1945 Const. are rights in the nature of property rights or fundamental civil rights protected by the Bill of Rights of our state and federal constitutions. Since such rights are not involved herein, we must hold that the review provided by Art. V, Sec. 22 is not applicable and that the review in this case must be on the basis provided in the above mentioned statutes."

Since the Ellis opinion was written, various decisions of the Supreme Court of the United States have considered and settled the nature of benefits under public assistance acts. In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the court dealt with the question of whether notice and an evidentiary hearing were prerequisites to termination of public assistance benefits. In holding that notice and hearing were required, the court said, 397 U.S. l. c. 261, 90 S.Ct. l. c. 1017:

"Appellant does not contend that procedural due process is not applicable to the termination of welfare benefits. Such benefits are a matter of statutory entitlement for persons qualified to receive them.[8] Their termination involves state action that adjudicates important rights. The constitutional challenge cannot be answered by an argument that public assistance benefits are 'a "privilege" and not a "right."' Shapiro v. Thompson, 394 U.S. 618, 627 n. 6, 89 S.Ct. 1322, 1327, 22 L.Ed.2d 600 (1969). Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation, Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); or to denial of a tax exemption, Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); or to discharge from public employment, Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956)."

Footnote 8 to the foregoing text discussed the nature of welfare entitlements in this language:

"It may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.' Much of the existing wealth in this country takes the form of rights that do not fall within traditional common-law concepts of property. It has been aptly noted that '[s]ociety today is built around entitlement. The automobile dealer has his franchise, the doctor and lawyer their professional licenses, the worker his union membership, contract, and pension rights, the executive his contract and stock options; all are devices to aid security and independence. Many of the most important of these entitlements now flow from government: subsidies to farmers and businessmen, routes for airlines and channels for television stations; long term contracts for defense, space, and education; social security pensions for individuals. Such sources of security, whether private or public, are no longer regarded as luxuries or gratuities; to the recipients they are essentials, fully deserved, and in no sense a form of charity. It is only the poor whose entitlements, although recognized by public policy, have not been effectively enforced.' Reich, Individual Rights and Social Welfare: The Emerging Legal Issues, 74 Yale L.J. 1245, 1255 (1965). See also Reich, The New Property, 73 Yale L.J. 733 (1964)."

In Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the court dealt with the necessity to provide a hearing be-

fore suspending a driver's license or motor vehicle registration for failure to post security to cover damages claimed by · aggrieved parties arising out of an accident. In passing thereon, the court said, 1. c. 539, 91 S.Ct. 1. c. 1589:

"Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. Sniadach v. Family Finance Corp., 395 U. S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (disqualification for unemployment compensation); Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956) (discharge from public employment); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) (denial of a tax exemption); Goldberg v. Kelly, supra (withdrawal of welfare benefits). See also Londoner v. Denver, 210 U.S. 373, 385–386, 28 S.Ct. 708, 713, 52 L.Ed. 1103 (1908); Goldsmith v. Board of Tax Appeals, 270 U.S. 117, 46 S. Ct. 215, 70 L.Ed. 494 (1926); Opp Cotton Mills v. Administrator, 312 U.S. 126, 61 S. Ct. 524, 85 L.Ed. 624 (1941)."

In the case of Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), the court again referred to the nature of welfare benefits and the fact that they are in the nature of property rights and are basic civil rights, when it stated as follows, 1. c. 552, 92 S.Ct. 1. c. 1122:

"Such difficulties indicate that the dichotomy between personal liberties and property rights is a false one. Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a 'personal' right, whether the 'property' in question be a welfare check, a home, or a savings account. In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized."

Finally, in Morrissey v. Brewer, 408 U. S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 293 (1972), the court dealt with the question of whether notice and a hearing were required as a condition to revocation of a parole, and in that connection stated, 1. c. 481, 92 S.Ct. 1. c. 2600:

"We turn, therefore, to the question whether the requirements of due process in general apply to parole revocations. As Mr. Justice Blackmun has written recently, 'this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege." ' Graham v. Richardson, 403 U.S 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534, 543 (1971)."

Subsequently, at 1. c. 482, 92 S.Ct. 1. c. 2601; the court stated further:

"We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege.' By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal."

█ From all the foregoing, we conclude and hold that welfare benefits are in the nature of property rights or fundamental civil rights protected by the Federal Constitution, and as such are "private rights" within the meaning of Art. V, § 22,

Mo.Const. Holdings to the contrary in Ellis v. State Department of Public Health and Welfare, 365 Mo. 614, 285 S.W.2d 634 (banc 1955); Allen v. State Department of Public Health and Welfare, 479 S.W.2d 183 (Mo.App.1972), and similar cases should not be followed in the future. Accordingly, we hold that the judicial review to be made in cases such as this is the review called for in Art. V, § 22, as implemented by § 536.140.

Such conclusion is in harmony with Shewmaker's analysis of the language of Art. V, § 22 which appears in the article entitled "Procedure Before, and Review of Decisions of, Missouri Administrative Agencies," 37 V.A.M.S. 145. Beginning at page 154, the article discusses the provisions of Art. V, § 22, and after stating that the delegates were thinking of all kinds of agencies when they used the term "judicial or quasi-judicial," then states, l. c. 157:

"It follows that the expression 'private rights' is also used in an extremely broad sense, since some of the matters dealt with by the agencies under consideration are, in a sense, privileges; e. g., the granting of certificates of convenience and necessity by the Public Service Commission."

In various areas, the courts of this state have recognized the applicability of Art. V, § 22 in instances in which licenses or privileges, rather than vested rights, were involved. For example, see State ex rel. State Highway Commission v. Weinstein, 322 S.W.2d 778 (Mo. banc 1959); State ex rel. Police Retirement System of the City of St. Louis v. Murphy, 359 Mo. 854, 224 S.W.2d 68 (1949), and Smith v. Missouri State Highway Commission, 488 S.W.2d 230 (Mo.App.1972).

We proceed, therefore, to apply to the proceedings before the Department of Public Health and Welfare the judicial review prescribed by Art, V, § 22, and by the implementing statute, § 536.140.

Is there competent and substantial evidence upon the whole record to support the Director's conclusion that appellant conveyed her interest in the real estate without receiving fair and valuable consideration therefor? Section 208.010.2(1)(a) defines "fair and valuable consideration" to mean "money or real or personal property received at the time of the transaction approximately equal to the market value of the property assigned, conveyed or transferred, and shall not for the purpose of this section be construed to include support, services or other advancements made or to be made by a relative to a claimant."

■ It is clear under the foregoing statutory provisions that "fair and valuable consideration" can consist of something other than money. It can consist of personal property, which is defined in § 1.-020(8) as including "money, goods, chattels, things in action and evidences of debt." A promissory note for the purchase price would fall within that definition. Likewise, a verbal promise to pay in the future (a thing or chose in action), accompanied by sufficient part performance by seller in conveying the land to make the oral promise enforceable, would fall within the statutory definition. As previously noted in the Director's findings of fact, there was a finding that appellant was to receive $400.00 from her brother Monroe for her interest in the Louisiana farm, and that $400.00 was the value of her interest (120 acres times $50.00 per acre divided by her 1/15th interest equals $400.00). The Director found that the deed was actually delivered by the appellant but that no money was actually paid. These were the entire findings of fact and they conform to what the evidence actually disclosed.

From the foregoing, the Director then concluded:

"The claimant transferred an interest in real estate without receiving fair and valuable consideration within the meaning of Section 208.010, Vernon's Annotated Missouri Statutes. She was therefore ineligible, under the provisions of said section, to receive public assistance at the time her case was closed. Her period of ineligibility is determined by the formula set forth in said section."

■■ Apparently, the conclusion of the Director was: Money was not received;

therefore appellant did not receive fair and valuable consideration. It is clear that she did not receive money, but the evidence and the findings of the Director himself do not support a conclusion that appellant did not receive personal property. On the contrary, the Director finds that she did receive a promise from her brother to pay $400.00 for her interest, and under § 208.-010.2(1)(a) and the definition in § 1.-020(8), that promise is personal property. There could be instances in which a promisor is insolvent and his promise to pay is worthless or unenforceable for some reason. On the basis of testimony so indicating, the Department could find a promise not to be fair and valuable consideration. There is no such evidence in the record in this case. The only evidence about ability to pay at all was testimony that Monroe had stated he had the money in the bank at the time, plus the testimony that immediately he had financial reverses with a partner which resulted in his inability to make the promised payments. That occurred subsequently, however, and would not be a basis for a finding that at the time of the promise his agreement to pay was without value or that he had no intention to pay. Hence, there was no evidence in the record in this case to support a denial of rights on the basis that appellant transferred her farm interest without receiving fair and valuable consideration. It is significant that the Director made no finding that the promise was not made in good faith or was not enforceable or that it was worthless because of inability to pay.

Accordingly, the order and judgment of the Circuit Court affirming the findings and decision of the Director of the Department of Health and Welfare is reversed and the cause remanded to the Circuit Court with directions to set aside its judgment and to enter a new judgment reversing the decision of the Director of the Department of Public Health and Welfare and remanding the cause with directions that the Director shall enter a decision in accordance with the views herein expressed.

SEILER, MORGAN, BARDGETT and HENLEY, JJ., concur.

HOLMAN, J., concurs in part and dissents in part in separate opinion filed.

DONNELLY, C. J., concurs in part and dissents in part and concurs in separate opinion of HOLMAN, J.

HOLMAN, Judge (concurring in part and dissenting in part).

I agree with that part of the principal opinion which holds that welfare benefits are "private rights" within the meaning of Art. V, § 22, Mo.Const., and hence decisions of the department are subject to judicial review under the constitutional and statutory provisions providing for review of administrative decisions.

I dissent, however, on the merits. This court has heretofore stated that the scope of our review in this type of case extends to a "determination of whether the findings and decision of the Commissioner are supported by competent and substantial evidence upon the whole record, and authorized by law. We may not substitute our judgment on the evidence for that of the Commissioner and we may not set aside his decision, unless it is not supported by competent and substantial evidence on the whole record, or it is not authorized by law, is arbitrary, capricious or involves an abuse of discretion." Tom Boy, Inc. v. Quinn, 431 S.W.2d 221, 225 (Mo.1968). In this case appellant was required to receive a fair and valuable consideration for her interest in the farm. Section 208.010, subsec. 2(1)(a), provides that such consideration means "money or real or personal property received *at the time of the transaction* * * *." (Emphasis added.) Here, the transaction was with a brother and was certainly not consummated in a businesslike manner. Appellant did not receive any money in return for her conveyance. If the brother had the money in the bank, as he stated, it is difficult to understand why he did not give appellant a

check at the time of the conveyance. As it turned out his promise to pay was worthless.

In view of the foregoing I do not think it may reasonably be said as a matter of law (as did the principal opinion) that the unsecured oral promise to pay by the brother was a consideration "approximately equal to the * * * value of the property * * * conveyed," as required by the statute. It is my view that this court cannot reasonably conclude that the decision of the Director was not supported by competent and substantial evidence.

Accordingly, I would affirm the decision on the merits.

DONNELLY, C. J., concurs.