Claude E. **MULLEN** and Florence L. **Mullen, Plaintiffs-Respondents,**

v.

Norris **FRIDLEY**, Sr., and Charles T. **Smallwood, Defendants-Appellants.**

No. 10624.

Missouri Court of Appeals,
Southern District,
Division Two.

May 1, 1980.

Motion for Rehearing or Transfer Denied May 23, 1980.

Application to Transfer Denied July 15, 1980.

Thomas J. Briegel, Briegel & Kimme, Union, for defendants-appellants.

Melvin E. Carnahan, Rolla, for plaintiffs-respondents.

HOGAN, Judge.

Plaintiffs brought this action in two counts to: 1) cancel a note and deed of trust, and 2) to enjoin exercise of the trustee's power of sale pending disposition of the cause on its merits. The trial court has entered a decree cancelling the note and deed of trust, and has permanently enjoined sale of the property to satisfy the deed of trust. Defendant appeals.

The operative facts of the case were in spirited conflict, but on the record the trial court might reasonably have found that in the fall of 1974, defendant Norris Fridley was a licensed real estate broker with an office at Gerald, Missouri. By his own statement, Mr. Fridley had been a real estate broker for 25 years, had sold property worth millions of dollars, and had generally been successful in "working things out" with purchasers to whom he sold property. Plaintiff Claude Mullen, by contrast, was a St. Louis truck driver ten years from retirement. Mrs. Mullen was a "housewife." Plaintiffs had accumulated $10,000 in savings and a 40-acre tract of land in Phelps County. Mr. Mullen earned "about" $20,000 a year as a truck driver. Plaintiffs had been involved in the purchase of two tracts of real estate.

In September 1974, plaintiffs were looking for property in Franklin County so Mr. Mullen could be at home occasionally in the evening. Plaintiffs were very much interested in a 40-acre tract in Franklin County known as the "Buhr property." This property had been listed with the defendant's firm; the owner's asking price was $82,500. The plaintiffs complained that the price was beyond their means. A representative of defendant's firm suggested that plaintiffs make an offer in the form of a proposed contract to pay $65,000, upon the following terms: $1,000 as earnest money at the time of making the offer, $9,000

upon execution of the contract of sale, and the remaining $55,000 as follows: a) interest only for the first nine (9) months after purchase; b) a principal payment of $20,000 on or before July 31, 1975, and c) $334 monthly thereafter for 10 years, "with [a] balloon note at [the] end." The $55,000 balance was to "bear interest" at the rate of 8 percent per annum, "and to accelerate annually at the maximum rate permitted by Law [sic]. Monthly payments to be increased accordingly." On behalf of both plaintiffs, Mr. Mullen signed this offer and it was tendered to the sellers, who refused it, according to Fridley, because it provided the sellers were to pay Fridley's commission. Plaintiffs objected to paying the commission, but were told on several occasions that they were obligated to do so because the sellers refused.

Negotiations with the sellers continued for some time. Plaintiffs' testimony was that they did not contact the sellers at any time, but spoke with Fridley on several occasions. Fridley represented to the plaintiffs that he would accept a "reduced" commission, and also represented that he would sell plaintiffs' Phelps County property so plaintiffs would have no difficulty in paying the commission. On at least one occasion, plaintiff Florence Mullen suggested to Fridley that plaintiffs should see an attorney; her testimony was that Fridley replied "No. No. That isn't necessary. . . . We're realtors not real estate, we're realtors. We sell a million dollars business a year. . . . Why should a lawyer come down here collect four and five hundred dollars just to look over the papers? . . We know, what we're doing and we know how to do all of these things."

The transaction was closed, finally, on November 13, 1974. Essentially, the terms of plaintiffs' obligation to the sellers remained unchanged. On the reverse side of the contract, however, dated October 2, 1974, there was a "Special Agreement" between plaintiffs and defendant. The terms of this "special agreement" were that plaintiffs agreed to pay defendant's firm a "reduced fee of $5,000.00 date of closing and it shall be paid in the form of a 1st Note and Deed of Trust secured on their 40 acre [sic] tract [in Phelps County] . . . ." This note was executed by plaintiffs, along with other documents, when the sale was completed. Plaintiffs testified that the name of the payee, Pat Smith, had not been inserted in the note when they signed it; the principal amount had not been filled in. Plaintiff Claude Mullen was asked if ". . . there [was] any time set as to when [the note] would be paid?" He answered: "No, just at the time of the property, which we had a listing [with defendant] on it. [Defendant] promised us that we would have [the Phelps County property] sold before we needed the note paid, which would have been nine months. . . ." Plaintiffs testified that defendant's firm took a listing on plaintiffs' property, made desultory efforts to sell it, but were unsuccessful. On May 19, 1976, the trustee wrote plaintiffs advising them that Fridley had directed him to sell the Phelps County property to satisfy the unpaid note.

■ In this court, defendant has devoted considerable effort to urging that his motion to abate the cause should have been sustained. Before his answer was filed, defendant filed a "motion to dismiss" on the ground that there was another action pending between the same parties for the same cause in Franklin County. The dilatory plea or plea in abatement on the ground of the pendency of another action for the same cause is, of course, preserved as a "defense" by Rule 55.27(a)(10), V.A.M.R. In support of his motion to abate, defendant filed a copy of the file of an action pending in the Franklin County Circuit Court. The amended petition in that action, filed June 28, 1976, is in three counts. Plaintiffs there allege various tortious acts on the part of defendant Fridley and the sellers, including wrongful exercise of the power of sale contained in the deed of trust in issue here. Nevertheless, plaintiffs sought damages for the tortious acts alleged, not cancellation of the instruments executed by them. The present action was a wholly equitable action for cancellation. Moreover, the issues raised in the Franklin County action were

much more extensive. The object and purpose of the two actions was not the same, and the principles of law involved were different. In such circumstances, the plea in abatement was properly denied. *Northcutt v. McKibben*, 236 Mo.App. 605, 613–614, 159 S.W.2d 699, 704–705[4, 5] (1942).

The merits require little more discussion. We agree that misrepresentations of law are not ordinarily regarded as actionable. However, there are two exceptions to this rule: it does not apply when the parties stand in a confidential relationship nor when one party is possessed of superior knowledge of the law or claims to be possessed of superior knowledge of the law and takes advantage of the other party's ignorance to mislead him. *White v. Mulvania*, 575 S.W.2d 184, 192[17] (Mo. banc 1978); *Fredrick v. Bensen Aircraft Corporation*, 436 S.W.2d 765, 770 (Mo.App.1968); *Gamel v. Lewis*, 373 S.W.2d 184, 191[3] (Mo. App.1963). The disparity between the parties in this case was exacerbated by Fridley's representation that he had great expertise in all matters concerning the sale of land and the legal effect of instruments executed in connection with the sale of land. While another conclusion might have been reached, the trial court could have found that plaintiffs understood Fridley's statement that they were obligated to pay the commission as an informed statement of the law. The court could further have found that having been gulled by Fridley's expansive statement of his expertise, plaintiffs relied on his representation and executed the written agreement and the note and deed of trust to their detriment. If Fridley's experience and knowledge were as extensive as he claimed, he must have known that some sort of contract of employment is essential to entitle a real estate broker to a commission, and the contract must have been entered into knowingly and understandingly. *Windsor v. International Life Ins. Co.*, 325 Mo. 772, 780–781, 29 S.W.2d 1112, 1115–1116[4] (1930); *Kohn v. Cohn*, 567 S.W.2d 441, 446 (Mo.App.1978). Moreover, Mr. Fridley must have known that as a real estate broker, he was not authorized to give advice or opinions as to the legal rights of the parties or the legal effect of instruments. *Hulse v. Criger*, 363 Mo. 26, 45–56, 247 S.W.2d 855, 862[10] (banc 1942). The trial court might also have found a confidential relationship between Fridley and the plaintiffs, but we do not base our decision on that ground; rather, we conclude that Fridley, claiming to possess superior knowledge of the law, represented to plaintiffs that as a matter of law, they were obliged to pay him a commission because the sellers would not; relying upon this representation and believing it, plaintiffs agreed to pay a commission by executing a note and first deed of trust on their Phelps County property.

Neither do we agree that the pleadings will not support the judgment. Mr. Fridley admitted he was the owner of the note; he testified that Pat Smith, payee of the note, was his secretary. His words were: "I take a lot of my paper [payable] in Pat Smith's name . . . ." In short, Fridley specifically disclaimed being a holder in due course, against whom only fraud as a real defense would have been available under § 400.3–305(2)(c), RSMo 1978, V.A. M.S. Plaintiffs were entitled to show fraud in the inducement as a defense under the provisions of § 400.3–306(d), RSMo 1978, V.A.M.S. and comment 5 thereto; *Costello v. Sample*, 470 S.W.2d 446, 448[2] (Tex.Civ. App.1971). The fraud in the inducement relied on was specifically pleaded.

For the reasons indicated, the judgment should be, and is affirmed.

All concur.