

# Missouri Court of Appeals

## Southern District

### Division One

INDIAN HILLS CIVIC ASSOCIATION,       )
DALE BRUNTS, JAMES O'FALLON,          )
RANDY WILLIAMS AND DIANA              )
WIDEMAN,                              )
                                      )
    Appellants,   )
                                      )
vs.                                   )    No. SD36800
                                      )    Filed:  November 22, 2021
INDIAN LAKE PROPERTY OWNERS           )
ASSOCIATION, INC.,                    )
                                      )
    Respondent.   )
                                      )

### APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable Kelly W. Parker, Judge

**AFFIRMED**

Indian Hills Civic Association (the "IHCA"),[1] Dale Brunts, James O'Fallon, Randy

Williams and Diana Wideman (collectively "Appellants") appeal from the trial court's judgment

---

[1] Appellants describe the "IHCA" as "an unincorporated nonprofit association within the meaning of RSMo § 355.066(14) organized exclusively among certain lot owners of the Indian Hills Subdivision.  IHCA pursues various purposes consistent with those established for unincorporated associations by statute and by law, including to promote and enforce for its members, and for no others, the privileges of lot ownership in Indian Hills Subdivision."

All references to statutes are to RSMo 2016, unless otherwise indicated.

in favor of Indian Lake Property Owners Association, Inc. (the "ILPOA"). In four points relied on, Appellants argue that the trial court erred in not granting various relief to them in connection with the ILPOA's levy of special assessments. Finding no merit to any of Appellants' four points, we deny the same and affirm the judgment of the trial court.

## Facts and Procedural History

This case concerns five, of approximately 1,000 members of the ILPOA, who enjoy the benefits of ILPOA special assessment expenditures and who have paid such assessments, but who now object to the method used by the ILPOA to determine voter approval on two special assessments for the design and reconstruction of the subdivision's Cove 9 bridge.

### *Parties*

Appellants are lot owners in the Indian Hills Subdivision. The ILPOA is a not-for-profit corporation. It contains approximately 1,800 lots (of which the ILPOA owns 40 to 60 lots), and has approximately 1,000 voting members. The ILPOA also regulates certain reserved common areas, such as the Indian Hills Lake Basin, a dam (constructed to impound the lake), common boat docks, the Cove 9 bridge, and all streets and roads within the Indian Hills Subdivision.

### *Powers and Authority of the ILPOA*

On July 11, 1962, Indian Hills Development Corporation executed Building and Use Restrictions ("BURs")[2] for the Indian Hills Subdivision that were to "be considered as covenants running with the land[.]"

---

[2] Deeds issued to lot owners contain a provision that all conveyances are subject to the Building and Use Restrictions ("BURs") of record. The parties refer to changes and/or compliance with the "BURs" or sometimes to the "Warranty Deed." The ILPOA uses the term "BUR aka Warranty Deed," and explains that these two terms are used interchangeably. In their points relied on, Appellants also make reference to "indenture" and "subdivision indenture." We infer these are also references to the deeds and/or BURs. For clarity and ease of reference, we use "BURs" in this opinion to encompass all of these different terms.

2

On August 13, 1962, Articles of Incorporation were filed for the ILPOA, and bylaws adopted—both of which were subsequently amended on multiple occasions. Significantly, we observe that the bylaws submitted to this Court as a part of the record on appeal—and upon which Appellants' arguments in this appeal are premised—indicate that the bylaws are effective as of January 1, 2020. As discussed more fully *infra*, the bylaws in effect in 2018 (that governed the matters challenged in the instant appeal) were not included in the record on appeal.

### *History*

From 1993 to 2017, the ILPOA attempted to pass various assessments to fund upgrades for the Cove 9 bridge, roads, security and the lake, pursuant to the BURs' two-third super-majority requirement (*i.e.*, requiring a two-third affirmative vote from all lot owners), but many of these attempts suffered from poor voter turnout and failed.

In April 2017, Cochran Engineering performed an inspection of the Cove 9 bridge and several serious problems with the bridge were found: (1) erosion of bridge supports as a consequence of the bridge being undersized and unable to accommodate the amount of water flowing through; (2) deterioration of timber pilings; (3) a cracking of the concrete deck allowing water to infiltrate the underlying steel pan causing significant rust; and (4) insufficient guard rails. The bridge was also 50 percent undersized for being the main entrance and exit to the subdivision. Cochran also recommended that the length of the bridge be extended from 24 feet to 44 feet. Cochran indicated that repairs would not solve these problems long term, and recommended that the bridge be replaced. Cochran also recommended that a consulting engineer experienced in bridge design be retained to design the replacement structure to ensure that the new bridge fit the current site.

3

In February 2018, the ILPOA sent a "Petition for Change to Building & Use Restrictions (Warranty Deed)" to all lot owners, seeking to amend the BURs from requiring a vote of at least two-thirds of lot owners, to requiring a "Simple Majority (>50%) of said lots who vote[.]"

In November 2018, the ILPOA sent out an "Official Ballot" setting forth a proposed amendment to the bylaws to allow for a "certified engineered design of the cove 9 Bridge" that would allow the ILPOA to obtain funding of $62,000 for the bridge design by rendering a one-time assessment of $62 per each lot owner. The amendment would require a two-thirds majority of all "[m]embers in good standing who cast votes[.]"

On November 9, 2018, the Board of Directors passed a motion directing that if the "bridge design ballot gets more than 50%", members would be billed for the assessment along with the annual dues as of January 1, 2019. The motion further indicated that any member with an outstanding balance as of March 1, 2019, would no longer be considered a member in good standing, and a two percent fee on all unpaid balances would be assessed as of March 31, 2019.

On November 13, 2018, the ILPOA sent a summary of the "lake infrastructure and major repair" of the Cove 9 bridge to all lot owners. The document also set out past voter results by lot location in the subdivision (specifically, members on the lake, members of undeveloped lots, part-time members, members owning lots on the east side of the bridge, and members owning lots on the west side of the bridge). The ILPOA indicated that this was an indication that the majority of the membership wanted to see and "vote for these projects 67-64%," but in order to "deliver to the majority of our memberships vote and voice," they needed to "move from a super majority 67% to a simple majority of 51% for special assessments."

On December 14, 2018, the Board of Directors adopted a "special assessment strategy" to address voting and assessment restrictions in the BURs, which in the past hindered the Board's

4

ability to maintain critical infrastructure needs. The Board reported in its minutes that the $62 bridge design assessment had passed, based on "bylaw requirements of needing 2/3 of voting members[,] [p]assed by 67.9%[,]" and the "Bridge Assessment went out with the annual dues."

In mid-2019, the ILPOA sent members an "Official Ballot" proposing an amendment to the bylaws for a special, one-time assessment for the construction of the Cove 9 bridge in the amount of $376 per member. The ballot designated that a "greater than 50% (Simple Majority) vote of all Members in good standing who exercise their right votes [sic] shall be required to proceed with this project and proposed By-Law addition." The assessment and amendment passed—503 members voted, with 349 (69 percent of participating lot owners) voting in favor of the measure.

On January 29, 2019, Appellants filed their "Petition for Enforcement of Restrictive Covenants, for Injunctive Relief, for Declaratory Relief and Damages." A five-count Second Amended Petition was filed on October 21, 2019. Count I contained 116 allegations common to all counts, but sought no relief; Count II sought declaratory judgment as to the assessments and rights of homeowners and the ILPOA;[3] Count III sought injunctive relief to restrain the ILPOA

---

[3] Count II specifically requested the court to "exercise [its] equitable powers to declare the respective rights of the Parties," to-wit:

    a. That in accordance with the decision of the Missouri Supreme Court in Indian Lake Property Association, 817 S.W.2d 305 (1991), [the ILPOA]'s right and power to establish and collect from [Appellants'] the charges for upkeep and maintenance of reserved common areas is derived from and "reserved by covenants".

    b. That [the ILPOA] and [Appellants] are mutually bound by the [BURs].

    c. That only upon agreement of owners of two-thirds of the lots within Indian Hills Subdivision to amend the covenants and restrictions of the recorded [BURs], the [the ILPOA] may collect monies from [Appellants] for the benefit of all common areas and services.

    d. That the [BURs] contemplate payments that allow [Appellants] to access to reserved common areas and do not contemplate area-specific restrictions upon [Appellants'] access to portions of reserved common areas, such as requiring a boat Registration Fee, when [Appellants] are members of the [ILPOA] in good standing and otherwise in compliance with their covenanted and agreed annual payments.

    e. That [the ILPOA] is a homeowners association and has no inherent rights or privileges to assess a 2% penalty and such interest and fines pursuant to and as authorized by RSMo § 448.3-102(10).

from future acts not authorized by the BURs; Count IV sought relief under the Missouri Merchandizing Practices Act ("MMPA"); and Count V asserted common law fraud claims against the ILPOA.

A bench trial was held on May 29, 2020 as to Counts II and III in Appellants' amended petition.[4] Appellants argued that the ILPOA's authority for passing bylaws and creating special assessments was strictly governed by the provisions of the ILPOA's authorizing documents, *i.e.*, the "Warranty Deed and BURs," and that the ILPOA failed to follow the authorized procedures in passing the special bridge assessments. The trial court heard evidence and argument from both parties.

On June 9, 2020, the trial court entered judgment in favor of the ILPOA on Appellants' Counts II and III. As relevant here, the judgment stated:[5]

> The Court, having heard and considered all the pleadings, having heard and considered all of the evidence, including all trial exhibits and the reasonable inferences arising therefrom, having in mind the applicable burdens of proof, having had the benefits of briefs from counsel and now being fully apprised in the premises does enter the Judgment and Decree as set out below.
>
> As to Count II Petition for Declaratory Judgment, IT IS HEREBY ADJUDGED AND DECREED that:

---

f. That the Bridge Design Assessment [$62] is an additional obligation and liability imposed on [Appellants] impermissibly by means of a By-Law, and, as such, it violates The Missouri Nonprofit Corporation Act, RSMo § 355.066(4).

g. That the Bridge Design Assessment was not validly established according to the covenants.

h. That the Court should order that the assessments collected from [Appellants] should be refunded or segregated in a Restricted Special Assessment Fund and impressed with a trust because the ballot proposition as approved by those voting expressed such a special fund commitment which was omitted from the published By-Laws effective January 1, 2019[.]

[4] Appellants requested a jury trial on Counts IV and V.

[5] When quoting from the judgment, we use upper and lower case letters—instead of all capital letters—to assist readability. We also omit any notation to any typographical errors.

1.    Annual Assessments as set forth in the Building and Use Restrictions may only be amended by two-thirds of the property owners in writing and are the only assessments to which the automatic lien upon the real estate is applicable.

2.    The by-law special assessments for the Cove 9 bridge design and construction were passed by the requisite number of members pursuant to the by-laws of Defendant and were within the corporate powers of the Defendant as set forth in Chapter 355 RSMo.  The by-law special assessments have been paid by the vast majority of the members of Defendant, and said assessment was for preservation of the common property owned by Defendant, and as such are enforceable against the individual members of the corporation.

3.    That the boat registration fee and fines provisions under the rules and regulations of Defendant are not assessments as contemplated by the Building and Use Restrictions and are valid rules and regulations of Defendant regarding the use of the common areas under the control of Defendant, as set forth in the Building and Use Restrictions, which were passed by the requisite number of members pursuant to Chapter 355 and the by-laws of Defendant.

4.    That the interest provision is not an assessment as contemplated by the Building and Use Restrictions and was adopted by the members of the corporation pursuant to the by-laws of Defendant and was within the corporate powers of the Defendant as set forth in Chapter 355 RSMo.

As to Count III Injunctive Relief, JUDGMENT is entered in favor of Defendant Indian Lake Property Owners Association.

On June 11, 2020, the ILPOA filed a motion to dismiss Counts IV and V for failure to state a claim.  On July 1, 2020, the trial court granted the ILPOA's Motion to Dismiss Count IV, and denied the ILPOA's Motion to Dismiss Count V.

On July 7, 2020, Appellants filed a "Motion to Reconsider or Amend Judgment or in the Alternative for New Trial" as to Counts II and III.  Additionally, Appellants filed a motion to reconsider the trial court's ruling dismissing Count IV, and a "Motion to Dismiss Count V" without prejudice.  On July 16, 2020, Appellants argued their motions to reconsider, which were denied by the trial court, and withdrew their motion to dismiss Count V.

7

On August 7, 2020, Appellants moved the trial court "to dispose of Count V and certify final judgment for purposes of appeal." On August 11, 2020, the trial court entered its order of dismissal as to Count V. This appeal followed.

In four points relied on, Appellants argue:

Point 1. The trial court erred, misapplied and erroneously declared the law by allowing Defendant to impose special home owner assessments, fees, and penalties through corporate bylaws or rules because Missouri law is that the plain meaning and intent of the subdivision indenture control, in that the terms of the subdivision indenture expressly require that all changes and any assessments are liens to be established uniformly 'in strict adherence' with the indenture by amending it according to its terms by agreement of a two-thirds majority of lot ownership.

Point 2. The trial court erred, misapplied and erroneously declared the law by allowing the Defendant to impose assessments, fees and penalties, pursuant to its general corporate powers, because the powers are limited by the member liability limitations of 355.197.2 RSMo that a bylaw of itself cannot create liability for assessments or fees, in that Defendant's assessments had no authorization other than the requisite vote for a bylaw and were not according to the terms of the subdivision indenture that apply uniformly to all charges owed by controlling owners to Defendant.

Point 3. The trial court erred, misapplied and erroneously declared the law by dismissing Plaintiffs' claims for damages pursuant to the Missouri Merchandising Practices Act ("MMPA"), Ch. 407 RSMo, based on its erroneous legal conclusion that to be actionable the claims may only arise 'in connection with' the 'original' transaction wherein Defendant sold the lots to the first private purchaser, because MMPA claims may arise not just 'before or during', but 'after' the sale, in that, pursuant to *Conway vs. CitiMorgage, Inc*., 438 S.W.3d 410 (2014), Plaintiffs alleged damages caused by unfair, oppressive and unlawful violations of the assessment provisions of deed terms to which Defendant was bound going forward from, i.e. 'after', the original sale[.]

Point 4. The trial court erred, misapplied and erroneously declared the law in dismissing Plaintiffs' common law fraud claims by concluding erroneously that Defendant's alleged misstatements were misrepresentations of law that are not actionable, because homeowners associations and other persons that occupy a position of trust can be liable for misstatements of the legal rights and relations of an indenture or for misstating the terms, in that, accordingly, Plaintiffs alleged that Defendant violated the trust reposed in it by misrepresenting that the amendment procedures of the subdivision indenture did not exclusively control, but that assessments, established by bylaws, are in fact enforceable legal obligations even if not in strict accordance with the subdivision indenture.

**Standard of Review**

Appellants' Points I and II seem to relate to the trial court's entry of judgment after hearing evidence at a bench trial—as to such claims, the trial court's judgment will be upheld "'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" ***Karney v. Dep't of Labor & Indus. Relations***, 599 S.W.3d 157, 161 (Mo. banc 2020) (quoting ***Murphy v. Carron*** 536 S.W.2d 30, 32 (Mo. banc 1976)). We defer to the trial court's credibility determinations, and matters of statutory interpretation are reviewed *de novo*. ***Medical Plaza One, LLC v. Davis***, 552 S.W.3d 143, 157 (Mo.App. W.D. 2018).

Appellants' Points III and IV, respectively, relate to the trial court's dismissal of their MMPA and common law fraud claims. As to Appellants' arguments in that vein:

> This Court reviews a circuit court's sustaining of a motion to dismiss *de novo.* In reviewing such a motion, the Court must accept all properly pleaded facts as true, give the pleadings their broadest intendment, and construe all allegations in the pleader's favor. A motion to dismiss for failure to state a claim tests only whether the petition adequately alleged facts that give rise to a cognizable cause of action or of a cause that might be adopted.

***Graves v. Missouri Dept of Corr., Div. of Prob. & Parole,*** 630 S.W.3d 769 (Mo. banc 2021) (internal quotations and citations omitted).

**Analysis**

*Point I:  BURs Terms*

In their first point, Appellants claim that the trial court "erred, misapplied and erroneously declared the law," by "allowing Defendant to impose special home owner assessments, fees, and penalties through corporate bylaws or rules[.]" Specifically, Appellants suggest that the BURs should "control" this situation, because it directs that assessments are liens that are to be

established "in strict accordance" with the BURs "by amending it according to its terms by agreement of a two-thirds majority of lot ownership."

Appellants' point relied on and argument section fail to identify the specific act (or failure to act) of the trial court at which their challenge is directed (and on which their claim for relief on appeal must be based). *See* Rule 84.04(d).[6] This is a fundamental prerequisite to relief, and alone would be fatal to Appellants' Point I.[7]

This is particularly troublesome in light of the deficient record submitted to us. Summarily, Appellants' argument is that that the trial court should have rejected ILPOA's special assessments because ILPOA utilized an unauthorized bylaw mechanism to accomplish passage of those assessments. Appellants suggest that a strict application of the controlling documents—including the controlling bylaws—demonstrate that ILPOA effected the special assessments without proper authority. Nevertheless, we are compelled to observe that the bylaws submitted to this Court indicate on their face that they are effective as of January 1, 2020. The special assessments at issue are not controlled by these subsequent bylaws, and would instead be governed by controlling bylaws in effect in 2018. The 2020 bylaws—*i.e.*, the only bylaws submitted in the record on appeal—are inapplicable, and yield no support to the Appellants' claims.

---

[6] All rule references are to Missouri Court Rules (2018).

[7] Appellants' Point II also fails to identify the trial court action or inaction premising their purported claim of error and request for relief on appeal.

It was Appellants' burden to demonstrate reversible error[8]—a significant aspect of that burden is providing the reviewing court with a complete and accurate record.[9]  Appellants do not attempt (or succeed) at accounting for the absence of the controlling 2018 bylaws from the record, and their arguments do not address the substantive effect of this deficiency.  "When an exhibit is omitted from the record on appeal and is not deposited with the appellate court, its intendment and content will be taken as favorable to the trial court's ruling and as unfavorable to the appellant." *Miller v. Culton*, 617 S.W.3d 879, 880 n.2 (Mo.App. S.D. 2021) (internal quotation and citation omitted).  Appellants make no effort at proving any rationale or excuse for this serious deficiency, and do not account for its substantive implications in their arguments.

Even if we were to ignore the omission of the controlling bylaws, the remaining ILPOA authorizing documents in the record do not support Appellants' arguments.  The ILPOA maintains general powers as a not-for-profit corporation, including the power "to impose dues, assessments, admission and transfer fees upon its members[.]"  § 355.131(14).  As set forth in the ILPOA's articles of incorporation, one of its purposes is to "assist in the maintenance of driveways, beaches and common areas located in . . . Indian Hills Subdivision."  The articles specifically direct that they do not restrict or limit the general powers of the ILPOA under the law, including "the power to raise funds by membership subscription or otherwise for the carrying out of the aforesaid purposes."

---

[8] *See **Geiler v. Liberty Ins. Corp.***, 621 S.W.3d 536, 547 (Mo.App. W.D. 2021) ("It is an appellant's burden (as the moving party) to overcome our presumption that the judgment of the trial court is correct.") (internal quotation and citation omitted).

[9] *See* Rule 81.12(f); ***TooBaRoo, LLC v. Western Robidoux, Inc.***, 614 S.W.3d 29, 38 (Mo.App. W.D. 2020) ("the parties *shall* direct the omission to be corrected by stipulation if anything material is omitted from the record.  The burden is on the appellant to submit the record necessary for appellate review.") (emphasis in original).

To arrive at their preferred conclusions, Appellants largely ignore these provisions, and direct us to the two-thirds voting requirement of the BURs, and the purported amendment requirements therein. Even if Appellants' argument did not fail on numerous other bases, this line of argument would be unpersuasive.[10]

As the moving parties below, Appellants had the burden of proof, which included the burden to "persuade the court to view the [evidence] in a way favorable to [their] position[.]" *Jamerson v. Boone*, 554 S.W.3d 899, 904 (Mo.App. E.D. 2018). At a one-day bench trial, both parties put on witnesses and evidence. After making credibility determinations and weighing the evidence, the trial court found against Appellants. Quite simply, Appellants failed in their burden of proof, which does not reflect trial court error.

Finally, there is no assertion that the special assessments were in any way unreasonable or abusive of the ILPOA's powers or authority. *See Lake Tishomingo Property Owners Ass'n v. Cronin*, 679 S.W.2d 852 (Mo. banc 1984) ("On the record before us the equitable obligation of these appellants cannot be disputed. . . . The assessment voluntarily made by the large majority of lot owners appears fair and equitable."). The ILPOA presented and obtained approval of the special assessments for the improvement of ILPOA property and for the mutual benefit of ILPOA members.[11]

---

[10] *See* TIMOTHY J. TRYNIECKI, 18 MISSOURI PRACTICE, REAL ESTATE LAW: SUBDIVISION INDENTURES – TRANSACTIONS & DISPUTES, § 23.4 (3rd ed. 2021):

> The developer who cares about his reputation and his product will take some care in drafting his restrictions beyond their immediate impact on his ability to market his inventory. . . . Long after a developer has sold the last lot, the subdivision residents and trustees must wrestle with the mundane problems of subdivision life.

[11] *See e.g.*, *Colvin v. Carr*, 799 S.W.2d 153, 155–58 (Mo.App. E.D. 1990); *Lake Wauwanoka, Inc. v. Anton*, 277 S.W.3d 298, 300–01 (Mo.App. E.D. 2009); *Green v. Lake Montowese Ass'n*, 387 S.W.3d 413, 418 (Mo.App. E.D. 2012).

Appellants fail to demonstrate reversible error in their Point I, and the same is accordingly denied.

### Point II: Member Liability Limitations

In their second point, Appellants argue that the trial court "erred, misapplied and erroneously declared the law by allowing the Defendant to impose assessments, fees and penalties, pursuant to its general corporate powers[.]" Appellants suggest that the ILPOA's corporate powers "are limited by the member liability limitations of 355.197.2 RSMo[,]" and "a bylaw itself cannot create liability for assessments or fees[.]" Thus, Appellants argue, "Defendant's assessments had no authorization other than the requisite vote for a bylaw and were not according to the controlling terms of the subdivision indenture that apply uniformly to all charges owed by owners to Defendant."

For the same reasons expressed in our discussion of Appellants' Point I, *supra*, Appellants Point II must fail. Point II is accordingly denied.

### Point III: Missouri Merchandising Practices Act

In Appellants' third point, they argue that the trial court "erred, misapplied and erroneously declared the law" when it dismissed Appellants' MMPA claim. Specifically, Appellants take issue with the trial court's "erroneous legal conclusion that to be actionable[,] the claims may only arise 'in connection with' the 'original' transaction wherein Defendant sold the lots to the first private purchaser[.]" Instead, Appellants claim that "MMPA claims may arise not just 'before or during', but 'after' the sale," and the ILPOA violated the "assessment provisions of deed terms to which [the ILPOA] was bound going forward from, i.e. 'after', the original sale."

Appellants fail to demonstrate that the MMPA was designed to accommodate this manner of cause of action. The purpose of the MMPA is the protection of "consumers by expanding the

common law definition of fraud to preserve fundamental honesty, fair play and right dealings in public transactions." ***Watson v. Wells Fargo Home Mortg., Inc.***, 438 S.W.3d 404, 407 (Mo. banc 2014) (internal quotation and citation omitted).  Section 407.025.1(1) provides a private cause of action to "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020."  Section 407.020 declares unlawful "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact **in connection with the sale or advertisement** of any merchandise in trade or commerce[.]" *Watson*, 438 S.W.3d at 407 (emphasis added).

In attempting to demonstrate that the MMPA was intended to apply to this situation, Appellants direct us to out-of-state case law, which is not binding or persuasive.  Following oral argument, counsel for the ILPOA directed us to ***State v. Kowalski***, 587 S.W.3d 709 (Mo.App. S.D. 2020).  That case directs that "all MMPA cases must allege a relationship between the sale of merchandise and the allegedly unlawful conduct."  ***Id.*** at 716.  In ***Kowalski***, "no such evidence was presented." ***Id.***  Here, no such allegation was made.  "Commerce" under the MMPA is not so wide as to cover every economic interaction contemplable:  "[w]e fail to see how the role of a collection agency satisfies the requirement of a relationship between the sale of merchandise or services and the alleged unlawful action." ***Id.*** (internal quotation and citation omitted).[12]

---

[12] After oral argument, Appellants' counsel also directed this Court to ***Haines v. Branson Cabin Rentals, LLC***,--- S.W.3d ---, 2021 WL 4059418, at *3 (Mo.App. S.D. Sept. 7, 2021).  That case dealt with the application of the Uniform Condominium Act to a condominium declaration—the UCA has its own separate and distinct statutory scheme and attendant body of case law. *See **Four Seasons Racquet & Country Club Prop. Owners Ass'n, Inc. v. Butler***, 539 S.W.3d 122 (Mo.App. S.D. 2018) (discussing particularities of UCA application).  Appellants fail to demonstrate that *Haines* is applicable, and we decline further treatment thereon.

14

It was Appellants' burden to demonstrate reversible error based on Missouri law, which they fail to do. Point III is accordingly denied.

### Point IV:  Common Law Fraud Claims

In their fourth point, Appellants claim that the trial court "erred, misapplied and erroneously declared the law" by dismissing Appellants' common law fraud claim.  Specifically, Appellants take issue with the trial court having "conclude[ed] erroneously that Defendant's alleged misstatements were misrepresentations of law that are not actionable[.]"  Instead, Appellants claim, "homeowners associations and other persons that occupy a position of trust can be liable for misstatements of the legal rights and relations of an indenture for misstating the terms[.]"

In support, Appellants suggest:

> Plaintiffs alleged that Defendant violated the trust reposed in it by misrepresenting that the amendment procedures of the subdivision indenture did not exclusively control, but that assessments, established by bylaws, are in fact enforceable legal obligations even if not in strict accordance with the subdivision indenture.

Like Appellants' Point III, our review of their Point IV is *de novo*.  The ILPOA argues that insofar as any misrepresentation was made, it was as to a matter of law (not fact) and therefore not actionable.  Appellants claim that "the cases hold that insofar as Defendant occupies a position of trust and its pertinent knowledge is far superior so that it can exploit the listener, the statements are actionable regardless if they be legal misrepresentations."  In support, Appellants direct us to *Mullen v. Fridley*, 600 S.W.2d 125 (Mo.App. S.D. 1980), where the court recited that generally speaking, "misrepresentations of law are not . . . actionable." *Id.* at 128.  However, the trial court noted two exceptions:  (1) "when the parties stand in a confidential relationship," and (2) "when one party is possessed of superior knowledge of the law or claims to be possessed of superior knowledge of the law and takes advantage of the other party's ignorance to mislead him." *Id.*

Neither exception is demonstrated in Appellants' brief, which was Appellants' burden as the moving party on appeal.

Appellants fail to demonstrate reversible error in the trial court's dismissal of their common law fraud claim, and their Point IV is denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - CONCURS

JACK A.L. GOODMAN, J. – CONCURS